# 2006 DTA 23

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL V**

LUIS F. SANTOS FERRER
Apelante

v.

IVONNE ÁLVAREZ RIVERA
Apelada

Núm. KLAN-05-01223

San Juan, Puerto Rico, a 2 de diciembre de 2005

Panel integrado por su Presidente, el Juez Rivera Martínez,
y los Jueces González Rivera y Ramírez Nazario

González Rivera, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece ante nos, el señor Luis F. Santos Ferrer, (en adelante señor Santos), y nos solicita la revocación de la sentencia emitida el 1 de septiembre de 2005 y notificada el 9 de septiembre de igual año por el Tribunal de Primera Instancia, Sala Superior de San Juan, (en adelante TPI). Mediante la referida sentencia, el TPI acogió el informe de la Examinadora de Pensiones Alimentarias y fijó en $3,577 mensuales la pensión alimentaria que el señor Santos debía pagar para el sustento de sus dos hijos. Le ordenó, además, a proveerle plan médico. (Apéndice del apelante, pág. 77).

Considerado en su totalidad el recurso presentado, los documentos que lo acompañan, y el derecho aplicable, resolvemos confirmar la sentencia apelada.

# I

El señor Santos y la señora Ivonne Álvarez Rivera (en adelante señora Álvarez) contrajeron matrimonio el 27 de junio de 1987. Durante su unión matrimonial procrearon dos hijos. El 8 de octubre de 2003, el señor Santos presentó una demanda de divorcio. (Apéndice del apelante, pág. 1). Ya desde el 2001, la pareja se había separado en varias ocasiones, por lo que en el 2002, el tribunal había fijado una pensión alimentaria de $1,650 quincenales que el señor Santos debía pagar. (Apéndice del apelante, pág. 22). En vista de que para la fecha de la presentación de la demanda de divorcio ya no existían unos gastos que se habían tomado en consideración para la fijación de dicha pensión, el señor Santos solicitó que el caso se refiriera a la atención de la Examinadora de Pensiones Alimentarias para modificar la pensión.

Luego de los trámites de rigor, el TPI decretó el divorcio mediante sentencia notificada el 18 de febrero de 2004. (Apéndice del apelante, pág. 10). Además, le dio curso a la revisión de pensión alimentaria solicitada por el señor Santos. Conforme con lo ordenado por el tribunal, el 12 de agosto de 2005, se celebró la vista ante la Examinadora de Pensiones en la que ambas partes declararon. (Apéndice del apelante, pág. 73).

Según surge del expediente, la señora Álvarez declaró que mientras estuvo casada con el señor Santos, trabajó en el negocio de éste. Para la fecha de la vista aludida, se desempeñaba como secretaria en una oficina de abogados, trabajo en el cual devenga un ingreso neto de aproximadamente $1,384.50 mensuales. (Véase, alegato de la parte apelada).

Mientras, el señor Santos declaró que se dedica a la reparación de embarcaciones. Explicó que su trabajo disminuye considerablemente durante los meses de verano y Semana Santa, ya que los dueños de los botes los utilizan en estas épocas. De igual modo afirmó que no puede trabajar los días lluviosos, ni los días feriados. El señor Santos declaró que trabaja un promedio de 8 horas diarias a base de cinco días a la semana. La tarifa que cobra por sus servicios asciende a $70 por hora. El señor Santos aclaró que compra las piezas necesarias para la reparación de las embarcaciones con su dinero, y luego se las factura al cliente. De modo que los cheques que recibe de los clientes como pago por sus servicios incluyen la partida correspondiente al reembolso por las piezas adquiridas. Sostuvo además, que todos los cheques que recibe de sus clientes los deposita en la cuenta bancaria y que no los cambia en efectivo. (Véase, escrito de apelación).

Luego de ser interrogado sobre sus cuentas bancarias y planillas de contribución sobre ingresos, la Examinadora de Pensiones le imputó al señor Santos un ingreso de $8,856.37 mensuales. La Examinadora expuso que según las Guías Mandatorias, la pensión alimentaria debía ser de $3,576.89 mensuales. Así, recomendó que se fijase esa misma cantidad como pensión. (Apéndice del apelante, pág. 73).

Así las cosas, el TPI acogió la recomendación de la Examinadora, y el 1 de septiembre de 2005 dictó sentencia, en la que fijó una pensión alimentaria de $3,577 pagaderos a razón de $1,788.50 quincenales. Dispuso, además, que el señor Santos proveería plan médico a los menores.

Inconforme, el señor Santos acude ante nos mediante recurso de apelación y señala los siguientes errores:

*"Cometió error el Tribunal de Primera Instancia al adoptar la recomendación de la Examinadora de Pensiones Alimentarias y fijar una pensión mensual de $3,577.00, más un plan médico para los menores, ya que la suma impuesta prácticamente excede los ingresos mensuales del apelante."*

Es errada la determinación de adoptar la teoría de la imputación de ingreso al presente caso y, a base de la misma, determinar que el ingreso mensual del apelante asciende a $8,856.37. Esta determinación se basó erróneamente en la apreciación de que la totalidad de los depósitos efectuados por el apelante en su cuenta bancaria correspondía a ingresos devengados. No obstante, la prueba desfilada estableció que los cheques que depositaba el apelante como pago de los clientes representaban no sólo el costo de la mano de obra pagada por el

cliente, sino también el pago por las piezas que el apelante adquiría para las correspondientes reparaciones. Es decir, los depósitos no correspondían a sus ingresos reales, lo que fue satisfactoriamente explicado tanto por el apelante como por la apelada. De igual forma, es errada la determinación de no tomar en consideración el pago correspondiente al seguro social para fines de la fijación de la pensión.

El señor Santos alega que solicitó la revisión de pensión alimentaria porque cuando se había fijado la pensión anterior se había tomado en consideración el pago mensual de un vehículo de la señora Álvarez. Al quedar saldo el auto, el señor Santos solicitó la revisión para que se redujera la pensión porque ya no existía la deuda del auto. El señor Santos entiende que no procedía entonces que en lugar de rebajar la pensión, el tribunal la aumentara al amparo de la doctrina de imputación de ingreso. Sostiene que no procedía recurrir a dicha doctrina, toda vez que demostró mediante preponderancia de la prueba cuáles eran sus verdaderos ingresos. El señor Santos arguye que al fijar la pensión no se tomó en cuenta los días que él no puede trabajar, ya sea por épocas en las cuales disminuye el trabajo, por días lluviosos, por vacaciones, o por estar enfermo, y que por tanto no genera ingresos.

Por otra parte, la señora Álvarez plantea en su alegato que el tribunal sí tomó en cuenta los días en que el señor Santos no genera ingresos al realizar la imputación de ingreso. Arguye, en síntesis, que contrario a lo aseverado por el apelante Santos, la Examinadora no se tenía que limitar a evaluar la prueba testifical y documental presentada para fijar la aludida pensión, sino que según se ha reiterado por el Tribunal Supremo, para determinar la capacidad económica del alimentante, es preciso considerar todos sus ingresos, así como su estilo de vida, entre otros factores. Adujo la apelada Álvarez que el Tribunal Supremo ha indicado que en consideración de la prueba circunstancial, el tribunal puede imponer una pensión alimentaria si puede inferir de dicha prueba que el alimentante tiene los medios suficientes para cumplir con su obligación.

## II

La obligación legal de un padre no custodio de proveer alimentos a sus hijos proviene, entre otros, de las disposiciones de los Arts. 142 a 150 del Código Civil, Capítulo 71, denominado "*Quién Debe Alimentar y Hasta qué Extremo*", 31 L.P.R.A. secs. 561 a 570, y el Capítulo 25 del tomo 8 de L.P.R.A., denominado Ley Orgánica de la Administración para el Sustento de Menores (Ley de Sustento de Menores), 8 L.P.R.A. secs. 501 a 530. Las controversias del caso giran principalmente sobre la determinación de la cuantía de los alimentos. El Art. 146 del Código Civil, 31 L.P.R.A. sec. 565, dispone:

*"La cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo."*

Además, el Art. 19 de la Ley de Sustento de Menores, 8 L.P.R.A. sec. 518, provee como sigue:

*"**Orden sobre pensión alimentaria - Determinación, revisión y modificación; guías mandatorias**

(a) Guías Mandatorias- El Administrador, en coordinación y consulta con el Director Administrativo de la Oficina de la Administración de los Tribunales, preparará y adoptará guías para determinar y modificar las pensiones alimentarias para menores de edad. Estas guías se aprobarán de conformidad con las disposiciones de las secs. 2101 et seq. del Título 3, conocidas como Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico. Las guías deberán estar basadas en criterios numéricos y descriptivos que permitan el cómputo de la cuantía de la obligación alimentaria. Las mismas serán revisadas por lo menos cada cuatro (4) años a partir de la fecha de su aprobación para asegurar que las pensiones alimentarias resultantes de su aplicación sean justas y adecuadas. ...*

*(b) Determinación- En todo caso en que se solicite la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en esta sección.*

*Si el tribunal o el Administrador, según sea el caso, determinara que la aplicación de las guías resultara en una pensión alimentaria injusta o inadecuada, así lo hará constar en la resolución o sentencia que emita y determinará la pensión alimentaria luego de considerar, entre otros, los siguientes factores:*

*(1) Los recursos económicos de los padres y del menor;*

*(2) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales;*

*(3) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;*

*(4) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y*

*(5) las contribuciones no monetarias de cada padre al cuidado y bienestar del menor."*

*También hará constar cuál hubiera sido el monto de la pensión resultante al aplicar las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico adoptadas, según dispone esta sección. Para la determinación de los recursos económicos del obligado a pagar una pensión alimentaria, se tomará en consideración, además del ingreso neto ordinario, el capital o patrimonio total del alimentante. Se considerarán iguales criterios de la persona custodia para el cómputo proporcional a serle imputado a éste.*

*...*

*(c) Revisión- Utilizando las guías mandatorias toda orden de pensión alimentaria [sic] cada tres (3) años desde la fecha en que la orden fue establecida. En aquellos casos en que la pensión fue establecida por un tribunal el Administrador podrá realizar la revisión y notificará mediante moción a dicho foro del hecho y del resultado de dicha revisión.*

*Además de realizar la revisión de una orden mediante las Guías Mandatorias para la Fijación y Modificación de Obligaciones Alimentarias, la revisión cada tres (3) años podrá estar basada en la aplicación de un ajuste del costo de vida. Las partes tendrán el derecho a impugnar el resultado de la revisión efectuada ante el foro que dicte la orden de revisión dentro de los treinta (30) días desde la fecha de notificación del ajuste. Durante dicho término, la orden podrá ser establecida mediante la aplicación de las Guías Mandatorias para la Fijación y Modificación de Obligaciones Alimentarias.*

*(d) Modificación- El Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias. Toda orden de pensión alimentaria de menores emitida por el tribunal o la Administración deberá apercibir a las partes de su derecho a solicitar modificación de su orden, y para aquellos casos bajo la jurisdicción de la Administración, dicha notificación se continuará expidiendo al menos una vez cada tres años. ...".*

La Sección 1 de las Guías establece la facultad para que un juez pueda imputar un ingreso para efectos de la fijación de pensiones alimentarias: ▮

*"Para efectos de la fijación de pensiones alimenticias, se considerará ingreso bruto también, el ingreso imputado por el juez en los casos en que ello lo amerite.*

*Se entiende por* **ingreso imputado** *aquel ingreso que el tribunal atribuye al padre alimentante cuando exista evidencia de que el alimentante está desempleado por voluntad propia, pero anteriormente había desempeñado alguna labor productiva o cuando haya evidencia de que el alimentante por voluntad propia abandonó su empleo o redujo su capacidad productiva para eludir las responsabilidades alimenticias para con sus hijos. Las medidas a tomar y el ingreso que fije estarán a discreción del juez tomando en consideración la empleabilidad del individuo y su historial de trabajo. En casos en que no exista información válida al respecto, el juez podrá aplicar el salario mínimo prevaleciente en el área. También se podrá imputar ingreso cuando el padre alimentante abandona su trabajo para irse a estudiar con el propósito de no cumplir su deber de alimentante. Su historial ocupacional podrá utilizarse como base para fijar el ingreso neto a imputarse."*

No se imputará ingreso, entre otras cosas:

*"1. En aquellos casos en donde el costo del cuidado de niños, cuando ello sea requisito para trabajar, y otros gastos a incurrirse, hagan improductivo ganar una salario.*

*2. Cuando la persona por su condición de salud o incapacidad no pueda trabajar.*

*3. Cuando permanecer al cuidado de los niños sea imprescindible para el bienestar de éstos."*

En cualquier circunstancia, el ingreso imputado quedará a la discreción del juez. No obstante, la imputación de ingresos ha de fundarse en los datos pertinentes y no puede consistir de una figura arbitraria. Si la imputación de ingreso no se fundamenta en hechos, la misma será muy baja en algunos casos y muy alta en otros. Por ello es necesario que quien impute el ingreso, ya sea ASUME, la Examinadora de Pensiones Alimentarias, o el tribunal, formule determinaciones de hechos sobre los factores en que se basó al imputarle ingreso al alimentante.

Por otro lado, en vista de que los señalamientos de error plantean esencialmente que el tribunal apelado erró en la apreciación de la prueba presentada, pasamos a discutir a manera de introducción, las normas de abstención judicial respecto a la misma.

Como se sabe, la apreciación de la prueba corresponde al foro sentenciador y los tribunales apelativos sólo intervendrán con ella cuando exista error manifiesto, pasión, prejuicio o parcialidad. *Lugo v. Mun. de Guayama,* **2004 J.T.S. 171**, págs. 348-9; *McConnell v. Palau,* **2004 J.T.S. 73**, pág. 955; *S.L.G. Piovanetti v. E.L.A.,* **2004 J. T.S. 55**, pág. 847; *Argüello v. Argüello,* 155 D.P.R. ___ (2001), **2001 J.T.S. 127**, pág. 94; *Trinidad v. Chade,* 153 D.P.R. ___ (2001), **2001 J.T.S. 10**, pág. 793; *Rolón v. Charlie Car Rental, Inc.,* 148 D.P.R. 420, 433 (1999); *Flores v. Soc. de Gananciales,* 146 D.P.R. 45, 49 (1998); *López Vicil v. I.T.T. Intermedia, Inc.,* 142 D.P.R. 857, 864-65 (1997).

La norma descansa en el hecho de que los foros de primera instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos y, por ello, su apreciación merece gran respeto y deferencia. *López y otros v. Dr. Cañizares,* **2004 J.T.S. 165**, pág. 299; *Argüello v. Argüello, supra; López Vicil v. I.T.T. Intermedia, Inc., supra.* Así pues, a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Pueblo v. Irizarry,* **2002 J.T.S. 68**, pág. 1110; *Pueblo v. Acevedo Estrada,* 150 D.P.R. 84 (2000). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental, Inc., supra; López Vicil v. I.T.T. Intermedia, Inc., supra; Pueblo v. Maisonave,* 129 D.P.R. 49, 63 (1991).

La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por el tribunal apelativo. El juzgador es quien de ordinario está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue quien vio y oyó a los testigos. El juez sentenciador ante quien deponen los testigos es quien tiene a oportunidad de verlos y observar su manera de declarar de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y por consiguiente de ir formando en su conciencia la convicción en cuanto a si dicen o no la verdad. De ahí que en ausencia de error, pasión, prejuicio o parcialidad, los tribunales apelativos no deben intervenir en la apreciación de la prueba y adjudicación de credibilidad del tribunal de instancia. *Argüello López v. Argüello García, supra.*

### III

Los señalamientos de error están íntimamente relacionados, por lo que los consideraremos en conjunto.

La alegación central del señor Santos es que la imputación de ingresos realizada por la Examinadora se basó erróneamente en la apreciación de que la totalidad de los depósitos efectuados por el apelante en su cuenta bancaria correspondía a ingresos devengados. Alega que la prueba desfilada estableció que los cheques que depositaba como pago de los clientes representaban no sólo el costo de la mano de obra pagada por el cliente, sino también el pago por las piezas que adquiría para las correspondientes reparaciones. Es decir, los depósitos no correspondían a sus ingresos reales.

Para considerar la referida contención, es pertinente tener claro ciertos aspectos que surgen de los autos. En este caso, la Examinadora de Pensiones imputó el ingreso del señor Santos, luego de celebrada una vista en la que declaró tanto la señora Álvarez como el señor Santos. El señor Santos tuvo la oportunidad de brindar prueba documental también. La imputación de ingresos hecha por la Examinadora estuvo respaldada por la evidencia existente en el expediente, así como por los testimonios de las partes, según se desprenden de los autos.

Del expediente surge la información necesaria para la imputación en cuanto al ingreso del apelante que realizara la Examinadora de Pensiones. En primer lugar, conocemos que el señor Santos tiene negocio propio. El propio apelante ha afirmado que su tarifa es de $70 por hora trabajada y que trabaja un promedio de 8 horas diarias, cinco días a la semana. Con esta información es suficiente para imputarle un ingreso que sobrepasaría los $10,000 mensuales, independientemente de los períodos en que arguye que no trabaja por diferentes razones y del dinero que constituye un reembolso por las piezas de botes que adquiere con su dinero. Nada de ello afecta el cálculo que revela un ingreso neto mensual de más de $10,000, ello corroborado por la información que surge de los estados de su cuenta bancaria, su planilla de contribución sobre ingresos y la PIPE. Es por ello que entendemos que al imputarle un ingreso neto mensual de $8,856.37 al señor Santos, la Examinadora tomó en cuenta todas las consideraciones señaladas por éste.

Alega también el señor Santos que la pensión impuesta excede su ingreso mensual. Sobre este particular, Manresa, *Comentarios al Código Civil Español*, Reus, Madrid, 1987, t.1, pág. 831, al comentar sobre el Art. 146 del Código Civil Español, esencialmente equivalente al Art. 146 nuestro, *supra*, expone:

*"Ese principio de proporcionalidad es uno de los caracteres esencialísimos de la obligación de alimentos, pues si ésta se halla establecida para que el alimentista pueda atender a las necesidades de la vida según su clase y posición social, claro y evidente es que ha de tener relación con ellas, y además no puede dejar de tenerse en cuenta el caudal del que ha de prestarlos para que no se le imponga al aliment[ante] una carga superior a los medios de que disponga para levantarla y al mismo tiempo para que no dejen de concederse los alimentos en la extensión adecuada, a la posición de la familia y a las exigencias que la misma lleva consigo."*

J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Reus, Madrid, 1995, T. 5, v. 2, pag. 478, al comentar sobre este tópico indica:

*"La valorización de los medios del obligado pueden también ofrecer algunas dudas. Dicha valoración, como la de la necesidad del alimentista, es de libre apreciación de los Tribunales. En líneas generales se puede entender que el obligado cuenta con medios suficientes si puede realizar la prestación alimenticia sin perjudicar su propia manutención."*

Más adelante, a la pág. 479, Castán, *supra*, menciona con aprobación la posición de Tedeschi, al efecto de que "*está en condiciones de suministrar alimentos sólo quien disponga de recursos que excedan de los necesarios para atender su propio mantenimiento y de otros alimentistas con derecho preferente-, teniendo en cuenta su condición social y en cierta medida sus hábitos de vida.*" Para una discusión más extensa, véase, Nieves Martínez Rodríguez, *La Obligación Legal de Alimentos Entre Parientes*, Editora La Ley, Madrid 2002, en particular la sec. 1.3 del capítulo 4, págs. 254-267, sobre *"La posibilidad económica del alimentante"*.

A similar tenor, en *Guadalupe Viera v. Morrell*, 115 D.P.R. 4, 15 (1983), el Tribunal Supremo expuso que: "*La determinación de la posibilidad económica del alimentante se hará tomando en consideración los medios de que disponga luego de atender su propio sostenimiento.*"

Finalmente, consideramos fundamental que al imponer la obligación de alimentos, el ingreso que le sobre al alimentante ha de ser suficiente para proporcionar la satisfacción de las necesidades de la vida al nivel mínimo aceptable para la conciencia social. Concluimos que el señor Santos retendrá una cantidad suficiente para satisfacer las necesidades que su estilo de vida pueda exigir. Como consecuencia, no le asiste la razón al argüir que la pensión fijada prácticamente excede sus ingresos.

La doctrina tradicional ha enfatizado que la determinación de la pensión alimentaria, siguiendo el principio de proporcionalidad del Art. 146, *supra*, queda al sano juicio del tribunal. Con la adopción de la Ley de Sustento de Menores, *supra*, nuestra Legislatura aparentó reducir el ámbito de dicha discreción. A esos efectos, el Art. 19 de la misma, *supra*, disponía:

*"Se presumirá que la pensión alimentaria resultante de la aplicación de las guías es justa, adecuada, y en el mejor interés del menor. Dicha presunción podrá ser controvertida por cualquiera de las partes utilizando los criterios establecidos por el Estado Libre Asociado de Puerto Rico. Si a base de la evidencia presentada para rebatir la presunción, el tribunal o el Administrador, según sea el caso, determinara que la aplicación de las guías resultará en una pensión alimentaria injusta o inadecuada, así lo hará constar en la resolución o sentencia que emita y determinará la pensión alimentaria...".*

Ahora bien, al aprobar la Ley Núm. 178 de 1ro de agosto de 2003, efectiva desde su aprobación, la Legislatura enmendó parte del Art. 19, *supra*. Al comparar los dos textos, mediante la Ley Núm. 178 de 1ro de agosto de 2003, efectivo desde esa fecha, la Legislatura eliminó del inciso (b) la presunción de corrección de la pensión determinada según las tablas y el requisito de desfile de evidencia para derrotar tal presunción. Al así hacerlo aclaró la norma jurídica de que el criterio final es la sana discreción del tribunal, ejercida tomando en consideración el principio de proporcionalidad y otras doctrinas jurídicas pertinentes.

Al considerar los aspectos específicos del caso, vemos que la pensión alimentaria que se desprende de la utilización de las guías dispone que el señor Santos viene obligado a cubrir $3, 577 de pensión alimentaria. En el caso que nos ocupa, el alimentante es un hombre adulto que trabaja de acuerdo a su capacidad productiva, en un oficio bien remunerado, dada la escasez de personas que se dedican al mismo y el constante mantenimiento necesario para estas embarcaciones. Lo anterior nos mueve a pensar que el apelante es una persona con una capacidad para generar ingresos considerables, por lo que la pensión impuesta no representa una carga demasiado onerosa para su propio sustento. Nuestro Tribunal Supremo ha establecido que con la prueba circunstancial ante la consideración del juzgador, éste puede inferir si el alimentante tiene a su alcance medios suficientes para cumplir con su obligación en el sustento de sus hijos. *Arguello v. Arguello, supra.* En mérito de ello,

consideramos justa la pensión alimentaria impuesta.

Después de un cuidadoso estudio de los autos, no consideramos que el juzgador primario haya actuado con pasión, prejuicio, parcialidad o error manifiesto al adoptar las determinaciones de hechos y conclusiones de derecho formuladas por la Examinadora luego de aquilatar la prueba y formular, al tenor de la credibilidad que le mereció la evidencia testifical y documental que tuvo ante sí, las determinaciones de hechos correspondientes para realizar la imputación de ingreso y fijar la pensión alimentaria en controversia. Por lo anterior, nos está vedado intervenir con tales determinaciones. *Argüello v. Argüello, supra.*

Entendemos que la Examinadora actuó correctamente al realizar la imputación de ingreso. Es menester recordar que en cualquier circunstancia el ingreso imputado quedará a la discreción del juez. En el ejercicio de su discreción, el juez decidió adoptar el ingreso imputado por la Examinadora. La imputación de ingresos en este caso se fundamentó en los datos pertinentes. Según las consideraciones que hemos desarrollado, concluimos que la imputación de ingreso de este caso no consistió en una figura arbitraria. Como consecuencia, la pensión fijada también nos resulta apropiada. Recordemos la norma jurídica de que el criterio final para determinar la corrección de la pensión fijada siguiendo las guías es la sana discreción del tribunal, ejercida tomando en consideración el principio de proporcionalidad y otras doctrinas jurídicas pertinentes. Resolvemos que el TPI tomó en consideración estas doctrinas, y fijó una pensión correcta.

Ninguna razón meritoria se aduce por el señor Santos para justificar nuestra intervención con la apreciación que de la prueba hizo el TPI para imputarle su ingreso. Nada en el expediente nos mueve a imponer sobre dicha apreciación, la nuestra. No hallamos evidencia que refute la determinación de la sala sentenciadora.

Por todo ello, estimamos que el foro apelado actuó correctamente al acoger el informe de la Examinadora de Pensiones y fijar la pensión a pagar por el señor Santos en $3,577 mensuales y al ordenarle proveer plan médico a sus hijos. Consecuentemente, no intervendremos con su apreciación.

**IV**

Por todo lo expuesto anteriormente, se confirma la sentencia apelada.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones