HÉCTOR LÓPEZ VICIL, demandante y peticionario, *v.* ITT INTERMEDIA, INC., demandada y recurrida.

Número: CC-96-329          Resuelto: 4 de abril de 1997

---

858

*Juan Luis Novas-Dueño*, de *Novas, Maza & Lamoso*, abogado del peticionario; *Radamés A. Torruella, Maggie Correa*

*Avilés* y *Mari Carmen Bosch*, de *McConnell Valdés*, abogados de la parte recurrida.

PER CURIAM: El caso de autos gira principalmente en torno a unas controversias de hecho. No obstante, sobre lo que se narra a continuación, no existe disputa alguna.

El demandante peticionario, López Vicil, comenzó a trabajar para la demandada recurrida, ITT Intermedia, Inc. (en adelante Intermedia) el 1ro de abril de 1972, como Gerente de Control de Calidad de dicha empresa. Catorce años más tarde, el 8 de septiembre de 1986, fue nombrado Gerente de Distribución.

López Vicil estuvo empleado por Intermedia hasta el 31 de enero de 1991; es decir, por espacio de casi 19 años. Durante ese tiempo, sus labores con la compañía fueron objeto de múltiples evaluaciones favorables, a raíz de las cuales López Vicil recibía cartas de felicitación escritas por sus superiores, al igual que aumentos de sueldo. El salario al terminar su empleo con la recurrida era de $55,320 anuales.

Intermedia tenía un plan mediante el cual sus empleados podían acogerse al retiro temprano (*early retirement*) a partir de cumplir los 55 años de edad. A diciembre de 1990, el peticionario ya cualificaba para el retiro voluntario. Entre 1991 a 1993, varios altos ejecutivos se retiraron de su empleo en Intermedia, antes de cumplir los 65 años de edad.

El 14 de diciembre de 1990, López Vicil fue llamado y compareció a la oficina del Gerente General de Intermedia. En esa ocasión, los presentes discutieron la terminación del empleo de López Vicil en Intermedia. El 31 de enero de 1991, López Vicil recibió una carta formal de despido. En dicha carta, en esencia, se le indicaba que el despido respondía a la resistencia de López Vicil a la autoridad de su supervisora inmediata. El peticionario acababa de cumplir 56 años de edad al momento del despido, y fue sustituido en su cargo por otra empleada de la empresa que tenía 30 años de edad.

Oportunamente, López Vicil presentó una querella contra su patrono. Alegó que había sido despedido sin justa causa y de forma discriminatoria por razón de su edad.

Luego de los procedimientos de rigor, y atendida la extensa prueba oral, documental y pericial presentada por las partes, el Tribunal Superior, Sala de Guayama, falló a favor de López Vicil. En esencia, determinó que su despido había sido discriminatorio, por lo que le concedió la suma de $416,473 por la pérdida de ingresos y de beneficios ocupacionales pasados y futuros; $100,000 por angustias mentales, y $100,000 por daños mentales, para un total de $616,473, que en virtud de la penalidad que impone la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 146 et *seq.*) en estos casos, se convirtió en una concesión total de $1,234,946, más $15,000 para honorarios de abogado.

En lo pertinente, el tribunal de instancia acogió la versión de lo acontecido, que había sido presentada por la parte demandante. Hizo las determinaciones de hechos siguientes, fundamentadas en la prueba aludida.

(1) Que en marzo de 1990, cuando López Vicil regresó a la empresa, luego de estar ausente durante unas semanas por enfermedad, tanto el Gerente General de Intermedia como el Gerente de Personal de esa compañía le comentaron a López Vicil que estaba "viejo", "liquidao" y "cansao", y que debía acogerse al retiro temprano.

(2) Que en la reunión de 14 de diciembre de 1990 el Gerente General de Intermedia le notificó a López Vicil que la compañía había decidido dar por terminado su empleo y que, para minimizar la pérdida de su salario, López Vicil debía acogerse al plan de retiro temprano de la empresa.

(3) Que durante 1990, López Vicil cursó correspondencia a su supervisora inmediata, en la cual le planteaba problemas relativos al funcionamiento de su departamento, pero que de ellos no se podía inferir de modo alguno que existiese animosidad por parte del peticionario hacia su supervisora, ni actitud de resistencia de éste a la autoridad de aquélla. Expresamente concluyó el foro sentencia-

dor que no hubo actos de insubordinación por parte de López Vicil.

Inconforme con la sentencia de instancia, el patrono acudió en apelación oportunamente ante el Tribunal de Circuito de Apelaciones. Este foro celebró la vista oral y examinó el voluminoso expediente del caso, incluso la transcripción de la prueba. Resolvió, entonces, que el tribunal de instancia había errado al acoger en su totalidad la versión de lo acontecido presentada por la parte demandante y al descartar la versión de Intermedia. Concretamente determinó el foro apelativo que

> ... llegamos a la conclusión que el balance más racional y justiciero de la prueba demuestra que López Vicil en fecha anterior amenazó a la gerencia con renunciar, y el 14 de diciembre Intermedia le informó su disposición de aceptarle la misma. Al ésta no concretarse, el 31 de enero fue despedido .... Cónsono con lo anterior, concluimos que el Tribunal de instancia cometió error manifiesto al apreciar la prueba y determinar que el 14 de diciembre el apelado fue despedido.

En cuanto al asunto de las relaciones entre López Vicil y su supervisora inmediata, el foro apelativo determinó lo siguiente:

> No es contradictorio con lo anterior el hecho de que la prueba de la demanda estableciera que las relaciones entre ellos eran cordiales. No podemos confundir la cordialidad en el plano laboral y personal con la existencia de unas relaciones excelentes. No albergamos dudas que el trato entre profesionales de tan alto nivel educativo y profesional era afable. Sin embargo, no es menos cierto que dichas relaciones estaban matizadas de tirantez y animosidad .... A la luz de lo anterior concluimos que las relaciones entre López Vicil [y su supervisora] eran conflictivas y por ende cometió error manifiesto el tribunal al determinar que las mismas eran excelentes.

El Tribunal de Circuito de Apelaciones concluyó que Intermedia había demostrado con su prueba que la razón para el despido de López Vicil "fue su relación con [su supervisora]", y que no fue discriminatoria. Por otro lado, también concluyó que tal razón no constituía justa causa para el despido, porque no había evidencia de que López

Vicil hubiese actuado de forma insubordinada o en violación de las normas de la empresa. Indicó que "la renuencia de [López Vicil] a reportarse a [su supervisora]" no había alcanzado "el grado de insubordinación".

A la luz de lo anterior, el foro apelativo dejó sin efecto la sentencia de instancia y, en su lugar, impuso a Intermedia una compensación para López Vicil de $28,448.74 por despido injustificado, al amparo de la Ley Núm. 80, sin honorarios de abogado.

Inconforme con el referido dictamen, López Vicil acudió ante nos mediante un recurso *de certiorari*. En esencia, adujo que erró el foro apelativo al sustituir sus propias determinaciones sobre los hechos por las del tribunal de instancia. Intermedia, por su parte, presentó escritos en oposición a que se expidiera el auto de *certiorari*. Con el beneficio de ambas comparecencias, pasamos a resolver, conforme a lo dispuesto en la Regla 50 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A.

## I

■ Tanto el foro de instancia como el foro apelativo reconocen expresamente que el peticionario estableció aquí un caso PRIMA FACIE de discrimen, al amparo de cualquiera de las dos leyes, según las cuales presentó su querella. López Vicil indudablemente probó, bajo el *Age Discrimination in Employment Act* (ADEA), 29 U.S.C. 621 *et seq.*, que: (1) pertenecía a la clase protegida, por ser una persona entre 40 y 70 años de edad; (2) estaba cualificado para ocupar la posición en cuestión; (3) fue despedido, y (4) fue sustituido por una persona mucho más joven. Bajo la Ley Núm. 100, *supra*, demostró que fue despedido sin justa causa. Por ende, López Vicil activó a su favor la presunción de que había sido despedido por discrimen de edad. *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42 (1983). En esto ambos foros judiciales están contestes y no hay razón para intervenir con tal dictamen.

■ Donde existe la discrepancia medular entre el tribunal de instancia y el apelativo es con respecto a la cuestión de si la empresa demandada, Intermedia, logró derrotar la presunción de discrimen; es decir, si logró establecer, mediante preponderancia de la prueba, que el despido *no fue discriminatorio. Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994). No cabe duda de que sobre esta cuestión, la prueba ofrecida por las partes fue conflictiva. Es decir, Intermedia presentó una prueba para establecer que la única razón por la cual despidió a López Vicil fue por sus problemas con su supervisora. Dicha prueba, sin embargo, estaba en abierto conflicto con la presentada por López Vicil, que demostraba que su despido nada tuvo que ver con las relaciones de éste con su supervisora.

El tribunal de instancia, luego de escuchar los testimonios orales tanto de López Vicil como los del Gerente General que despidió a López Vicil, de su supervisora, y de otros testigos, expresamente concluyó que Intermedia no logró destruir la presunción en su contra de que el despido de López Vicil fue discriminatorio. Determinó, además, que "las razones aducidas por ITT Intermedia para el despido de López Vicil fueron meros pretextos y que el motivo del despido fue la edad de éste". Más aún, el foro de instancia también concluyó expresamente que la prueba presentada por Intermedia *no era creíble.*

Frente a estas determinaciones tajantes y ponderadas del foro de instancia, ¿podía el foro apelativo descartarlas y sustituirlas por sus propias apreciaciones, fundamentadas en un examen del expediente del caso? La respuesta es claramente que no: el foro apelativo erró al actuar como lo hizo.

■ Como se sabe, es norma fundamental de nuestro ordenamiento jurídico que un tribunal apelativo no intervendrá con las determinaciones de hecho ni con la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo que haya mediado prejuicio o error manifiesto de su

parte. *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139 (1996); *Pueblo v. Bonilla Romero*, 120 D.P.R. 92 (1987); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Ortiz v. Cruz Pabón*, 103 D.P.R. 939 (1975); *Rodríguez v. Concreto Mixto, Inc.*, 98 D.P.R. 579 (1970). Ello es particularmente cierto cuando están en cuestión elementos altamente subjetivos, como es en el caso de autos lo relativo a la *intención* del patrono. En tales casos, el juzgador de los hechos, que oyó y vio declarar a los testigos, y apreció su *demeanor*, es quien está indudablemente en la mejor posición para aquilatar la prueba testifical desfilada. *Ortiz v. Cruz Pabón*, supra.

■     El foro apelativo justificó su intervención con las determinaciones del juzgador de los hechos sobre la base de que éste había incurrido en un error manifiesto. Sin embargo, dicho foro apelativo no demostró propiamente que hubiese tal error manifiesto del juzgador de instancia. Todo lo que demostró es que existía *prueba conflictiva* sobre los hechos en cuestión. La mera existencia de prueba conflictiva no constituye un error manifiesto. Por el contrario, reiteradamente hemos resuelto que cuando existe un conflicto entre las pruebas, corresponde precisamente al juzgador de los hechos dirimir ese conflicto. *Sanabria v. Sucn. González*, 82 D.P.R. 885 (1961); *Méndez v. Kraidman*, 63 D.P.R. 281 (1944); *Hermida & Palos v. Gestera*, 23 D.P.R. 100 (1915); *Banco de Puerto Rico v. Sucesión Font*, 14 D.P.R. 578 (1908).

■     Hemos examinado con cuidado el voluminoso expediente del caso de autos. Un análisis integral de éste *no* produce insatisfacción o intranquilidad de conciencia con las controvertidas determinaciones de hecho del foro de instancia, de tal magnitud que estremezca nuestro sentido básico de justicia. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986). Resolvemos, pues, que erró el foro apelativo al sustituir sus apreciaciones sobre los hechos por las del tribunal de instancia.

## II

Lo anterior no dispone totalmente del recurso ante nos. En vista de lo que resolvió el Tribunal de Circuito de Apelaciones en el caso de autos, éste no entró a considerar uno de los errores concretos que Intermedia presentó en apelación ante ese foro. Debemos atender ahora dicho planteamiento de error, por razones de economía judicial, para la expedita y completa adjudicación de este caso.

A la fecha de su despido, López Vicil acababa de cumplir 56 años de edad. El tribunal de instancia determinó que éste tenía derecho a una compensación por la pérdida de ingresos futuros hasta que cumpliese 65 años, en enero de 2000. Dicho foro entonces valorizó la suma total por ingresos dejados de percibir, pasados y futuros, en $416,473, y determinó que la compensación que habría de concederse por este concepto, conforme a la penalidad de la citada Ley Núm. 100, era de $832,946.

Respecto a este asunto, Intermedia presentó como error de derecho que a López Vicil se le hubiese concedido una partida por ingresos futuros, sin antes establecer que no procedía su reinstalación en el empleo. Tiene razón Intermedia.

La Ley Núm. 100, *supra*, en su Art. 2-A, 29 L.P.R.A. sec. 147a, dispone que el tribunal sentenciador, en casos como el de autos, "podrá ordenar al patrono que reponga en su empleo al trabajador". Como el propósito medular de esta legislación es que el trabajador pueda disfrutar de su empleo sin sufrir discrimen, es de suponer que el remedio preferente en casos de despido por discrimen sea la reposición en el empleo, siempre que ello sea posible. Así se ha interpretado en la jurisdicción federal en relación con normas iguales o análogas a la nuestra. Véase: *Selgas v. American Airlines*, WL6216 (1er Cir. 1997); *Thomlison v. City of Omaha*, 63 F.3d 786 (8vo Cir. 1995); *Wells v. New Cherokee Corp.*, 58 F.3d 233 (6to Cir. 1995); *Roush v. KFC*

*Nat. Management Co.*, 10 F.3d 392 (6to Cir. 1993); *In re Lewis*, 845 F.2d 624 (6to Cir. 1988).

Aquí, al momento de dictarse sentencia en instancia, la supervisora de López Vicil se había retirado de la empresa. Parecería que cualquier posibilidad de fricción en el empleo, pues, había desaparecido. Como López Vicil no había cumplido aun los 65 años, el tribunal de instancia debió dilucidar si la reinstalación era apropiada. *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 509–510 (1985). Como aun a la fecha de hoy restan varios años antes de que López Vicil llegue a la edad de 65, debe devolverse el caso al tribunal de instancia para que, luego de escuchar a las partes, determine si el remedio de reposición es jurídicamente posible. De ser ello así, la compensación en concepto de la pérdida económica se limitará a ingresos pasados.

### III

■ Existe aún otro asunto que debemos dilucidar. Aunque Intermedia no lo presentó en su recurso de apelación ante el Tribunal de Circuito de Apelaciones, el foro de instancia cometió otro error de derecho que debemos conjurar. Como se sabe, en su función de revisión, este Tribunal no tiene que limitarse a la consideración de los errores señalados. Es nuestra obligación velar porque se haga justicia a aquella parte que, de acuerdo con nuestro más sano criterio, tiene derecho a ella. *Ríos Quiñones v. Adm. Servs. Agrícolas*, 140 D.P.R. 868 (1996); *Rodríguez Cruz v. Padilla Ayala*, 125 D.P.R. 486 (1990); *Ab Intestato Marini Pabón*, 107 D.P.R. 433 (1978); *Santiago Cruz v. Hernández Andino*, 91 D.P.R. 709 (1965); *Dávila v. Valdejully*, 84 D.P.R. 101 (1961); *Coll v. Picó*, 82 D.P.R. 27 (1960); *Cruz v. Bruno*, 76 D.P.R. 966 (1954).

En su sentencia, el foro a quo concedió a López Vicil $100,000 en compensación de sus angustias mentales y otros $100,000 en compensación de daños mentales, que unidos a la penalidad ordenada por la Ley Núm. 100, *su-*

*pra,* suman un total de $400,000. Esta determinación es jurídicamente errónea, por dos razones. En primer lugar, debe notarse que ambas compensaciones giran primordialmente en torno a la depresión sufrida por López Vicil por razón de su despido. Es decir, la referida depresión se compensa dos veces, una como angustia mental y otra como daño mental. No hay nada en nuestro ordenamiento jurídico que justifique la concesión de dos partidas distintas por un mismo daño.

■ Por otro lado, las partidas concedidas son exageradas. Como hemos resuelto antes, la apreciación valorativa de elementos intangibles no está exenta de cierto grado de especulación. Además, los sufrimientos mentales, llevados a sus extremos, son cualificables al infinito. Sin unos límites razonables, la indemnización dejaría de ser un resarcimiento para convertirse en punitiva. *Riley v. Rodríguez de Pacheco,* 119 D.P.R. 762 (1987); *Rivera v. Rossi,* 64 D.P.R. 718 (1945). De ahí que la adjudicación de daños no deba ser extremadamente baja ni desproporcionalmente alta. *Urrutia v. A.A.A.,* 103 D.P.R. 643 (1975).

Resolvemos que en este caso procedía una única compensación por daños y angustias mentales de $25,000, que unida a la penalidad de la Ley Núm. 100, *supra,* totaliza $50,000 por este concepto.

## IV

■ El tribunal de instancia impuso a Intermedia $15,000 en honorarios de abogado, *por temeridad.* En vista de la naturaleza altamente controvertida de las cuestiones de este caso, y de su complejidad, de ordinario hubiésemos decretado que no procedía tal imposición de honorarios de abogado. *García Larrinua v. Lichtig,* 118 D.P.R. 120 (1986). Sin embargo, el Art. 4 de la Ley Núm. 100, *supra,* 29 L.P.R.A. sec. 149, dispone mandatoriamente la imposición de honorarios de abogado en casos de discrimen patronal. Además, es menester tener en cuenta que en Puerto Rico

no se permite que los empleados que reclamen contra sus patronos tengan que pagar honorarios a sus abogados por el servicio prestado en tal reclamación laboral. Ley Núm. 402 de 12 de mayo de 1950, según enmendada el 3 de junio de 1980 (32 L.P.R.A. sec. 3114 *et seq.*). Es nulo y contrario al orden público cualquier contrato o acuerdo en el que un empleado se obligue directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones laborales judiciales o extrajudiciales contra sus patronos. Ley Núm. 402, *supra*. En tales casos, si el empleado es exitoso en su reclamación, la ley aludida dispone que "se condenará al patrono al pago de honorarios de abogado". Los tribunales tienen el deber de velar porque estas disposiciones de ley se cumplan a cabalidad.

Por todo lo anterior, procedía la imposición de honorarios aquí. Tomando en cuenta que luego de los trabajosos procedimientos en instancia, López Vicil ha tenido que litigar también en dos foros apelativos, y que aún así el pleito todavía no termina, se enmienda la cantidad fijada para los honorarios de abogado, y se aumenta a $20,000.

## V

Por los fundamentos expuestos, *se expide el auto de certiorari y se revoca la sentencia del Tribunal de Circuito de Apelaciones en el caso de autos. Se deja sin efecto también la compensación concedida al peticionario por el tribunal de instancia, y se devuelve el caso a ese foro, para que, luego de dilucidar el asunto de la reposición en el empleo, fije una nueva compensación, conforme a lo aquí dispuesto.*

*Se dictará sentencia de conformidad.*

— o —

## RESOLUCIÓN

Se enmienda *nunc pro tunc* nuestra Sentencia (Regla 50) de 27 de febrero de 1997 para que lea: PER CURIAM.

*Publíquese.*

Lo acordó el Tribunal y certifica el señor Secretario del Tribunal Supremo.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*