# 2007 DTA 93

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE CAGUAS
PANEL XI**

DAVID LÓPEZ CASTRO
Apelado

v.

ARISTIDES QUINTANA DEL VALLE Y EILEEN HERNÁNDEZ
Apelantes

Núm. KLAN-06-00239

San Juan, Puerto Rico, a 19 de julio de 2007

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Feliciano Acevedo y Escribano Medina

Feliciano Acevedo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante recurso de apelación comparecen el Sr. Arístides Quintana Del Valle, su esposa la Sra. Eileen Hernández y la sociedad legal de gananciales por ambos compuesta (demandados-apelantes). Nos solicitan la revisión de la Sentencia emitida el 30 de diciembre de 2005, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), notificada el 11 de enero de 2006.

La Sentencia apelada declaró *"Ha Lugar"* la demanda sobre daños y perjuicios presentada por el Sr. David López Castro (demandante-apelado) y les impuso a los demandados-apelantes el pago de $40,000.00 por concepto de daños morales y $1,500.00 por concepto de honorarios de abogado, más el pago de costas e intereses legales.

Por los fundamentos que expresamos a continuación, resolvemos MODIFICAR la Sentencia apelada, en lo que atañe a la cuantía fijada a favor del demandante-apelado por los daños morales que sufrió y así modificada se CONFIRMA.

## I

Según surge del expediente ante nuestra consideración, las partes de epígrafe son propietarios de residencias contiguas localizadas en la calle 13 de la Urbanización Bairoa del Municipio de Caguas. Entre los años 2001-2003 fueron vecinos en dichas residencias. El demandante-apelado es divorciado, pensionado por incapacidad física y padre custodio de dos menores de edad, uno de los cuales está diagnosticado con autismo.

Por su parte, el codemandado-apelante se desempeña como guardia de seguridad, su esposa es enfermera y tienen dos hijos menores de edad. Al momento de los hechos que dieron lugar al pleito de autos, los demandados-apelantes tenían, además, una crianza doméstica de aves comúnmente conocidas por el nombre de cockatiels (ninfas o carolinas) y de periquitos (loros).

Durante el 2001, el demandante-apelado llamó la atención de los demandados-apelantes y les informó que sus pájaros le molestaban, pues hacían mucho ruido. Además, les indicó que su hijo padece de autismo y se torna nervioso e intranquilo con el ruido de los pájaros.

Las desavenencias entre las partes continuaron a tal punto que el 20 de octubre de 2001, el Sr. Quintana Del Valle, demandado-apelante, llamó a la policía. El personal de dicha dependencia lo orientó para que acudiese al Centro de Mediación de Conflictos y las partes intentaran llegar a un acuerdo.

El 22 de octubre de 2001, las partes acudieron al Centro de Mediación de Conflictos y acordaron lo siguiente:

*"[e]l Sr. Arístides Quintana se compromete a reubicar las aves en su casa a otro lugar donde no se perturbe la tranquilidad del Sr. David López."*

Por su parte, el señor López tomará las medidas para que su perro no moleste con ladridos al señor Quintana. También dejará de encender el farol que incomoda con la luz al señor Quintana. ■

220

Por otro lado, el demandante-apelado presentó una querella por agresión en contra del demandado-apelante. El 9 de abril de 2002, el TPI determinó no causa para arresto y el Ministerio Público no fue en alzada, convirtiéndose dicha determinación en final y firme.

Sin embargo, las partes continuaron con el intercambio de querellas. El 22 de diciembre de 2002, el TPI emitió una *"Resolución Fijando Estado Provisional de Derecho"* al amparo de la Ley Núm. 140 de 23 de julio de 1974, conocida como la Ley sobre Controversias y Estados Provisionales de Derecho, 32 L.P.R.A. 2871 *et seq.*, con vigencia hasta el 30 de septiembre de 2003. En dicha resolución, se le ordenó a los demandados-apelantes a *"no poner ni mover ningún tipo de pájaro que produzca ruido en la marquesina que colinda con el querellante"*. ▮

El 3 de enero de 2003, el demandante-apelado presentó la demanda que dio inicio al pleito de marras. El demandante-apelado alegó que las aves de los demandados-apelantes no habían sido reubicadas y que las mismas continuaban perturbando su tranquilidad. Añadió que los demandados-apelantes no cumplieron el acuerdo suscrito en el Centro de Mediación de Conflictos y que la situación creada por éstos le provocó una condición emocional diagnosticada como depresión.

El 13 de agosto de 2003, los demandados-apelantes presentaron su *"Contestación a Demanda"* que fue acompañada por una *"Reconvención"* en la cual alegaron que cumplieron el acuerdo suscrito en el Centro de Mediación de Conflictos, que la condición de depresión del demandante-apelado era preexistente y que por las actuaciones de éste sufrieron daños por sufrimientos, angustias mentales, gastos de abogado y ausencias frecuentes a sus respectivos lugares de trabajo.

Mientras tanto, el 21 de enero de 2004, el TPI emitió una orden recíproca de protección, con vigencia de un año, al amparo de la Ley Núm. 284 de 21 de agosto de 1999 (Ley de Acecho), 33 L.P.R.A. §§4013-4026.

Realizados los trámites de rigor, el juicio en su fondo se llevo a cabo el 8 de diciembre de 2005. El TPI emitió la correspondiente Sentencia el 30 de diciembre de 2005 y notificó la misma el 11 de enero de 2006. Mediante dicha sentencia declaró Ha Lugar la demanda y ordenó a los demandados-apelantes a pagar solidariamente $40,000.00, mas $1,500.00 por concepto de honorarios de abogado e intereses.

Insatisfechos con el resultado, el 23 de enero de 2006, los demandados-apelantes presentaron una *"Moción de Reconsideración y de Determinación de Hechos Adicionales"*. En Resolución emitida y notificada el 27 y 30 de enero de 2007, respectivamente, el TPI declaró No Ha Lugar la solicitud de determinación de hechos adicionales y de reconsideración.

Inconformes, acuden ante nos los demandados-apelantes y aducen que el TPI cometió 10 errores, a saber:

*"A. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR HA LUGAR LA DEMANDA RADICADA AL NO HABERSE ESTABLECIDO LOS REQUISITOS PARA UNA ACCIÓN DE DAÑOS Y PERJUICIOS POR PERSECUSIÓN MALICIOSA POR LA PARTE DEMANDANTE.*

*B. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LOS APELANTES TENÍAN DIEZ (10) COTORRAS Y VARIAS AVES EXÓTICAS CUANDO LA PRUEBA DESFILADA FUE A LOS EFECTOS DE QUE EN TODO CASO, EN ALGÚN MOMENTO, FUERON CUATRO (4) COCKATIELES.*

*C. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL HABER HECHO DETERMINACIONES DE HECHOS BASADAS EN INFERENCIAS QUE NO ESTÁN SUSTENTADAS CON LA PRUEBA PRESENTADA POR LA PARTE DEMANDANTE.*

*D. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL TOMAR CONOCIMIENTO JUDICIAL SOBRE LOS COCKATIELS DE UNA FUENTE LA CUAL NO SOLO TERGIVERSÓ, SINO QUE LA UTILIZÓ PARA SUSTENTAR SUS INFERENCIAS QUE NO FUERON SUSTENTADAS POR LA PRUEBA PRESENTADA POR LAS PARTES.*

*E. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL HACER DETERMINACIONES DE HECHOS SOBRE LA NATURALEZA DEL AVE COCKATIEL Y SUS CARACTERÍSTICAS CUANDO LA PARTE DEMANDANTE NUNCA PASÓ PRUEBA DE LA INTENSIDAD DEL RUIDO, NI DE LA NATURALEZA DE LAS AVES.*

*F. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO HACER DETERMINACIONES DE HECHOS CONFORME A LA PRUEBA PRESENTADA Y AL AQUILATARLA.*

*G. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIDERAR LA TOTALIDAD DEL TESTIMONIO DEL PERITO DE LA PARTE DEMANDANTE.*

*H. ERRÓ EL TRIBUNAL DE PRIMERA INTANCIA AL DECLARAR HA LUGAR LA DEMANDA PARTIENDO DE QUE NO SE CUMPLIÓ CON UN ACUERDO DEL PROGRAMA DE MEDIACIÓN Y (sic) CONFLICTOS CUANDO EL ESTADO DE DERECHO ERA EL ESTABLECIDO EN LA ORDEN DE PROTECCIÓN RECÍPROCA ENTRE LAS PARTES.*

*I. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER A LA PARTE DEMANDANTE APELADA COSTAS, HONORARIOS DE ABOGADO E INTERESES A PARTIR DE LA RADICACIÓN DE LA DEMANDA, PUES, ENTRE OTRAS COSAS, NO SE PROBÓ LA TEMERIDAD NI CONTUMACIA DE PARTE DE LOS DEMANDADOS APELANTES.*

*J. LA PARTE DEMANDANTE LEVANTARÁ CUALQUIER OTRO ERROR DE DERECHO QUE ENTIENDA QUE SE HAYA COMETIDO LUEGO DE ESCUCHAR LA TRANSCRIPCIÓN DE LA PRUEBA EN JUICIO."*

Contando con el beneficio de la comparecencia del demandante-apelado y de la transcripción de la prueba, procedemos a resolver.

## II

En su primer señalamiento de error, los demandados-apelantes sostienen que erró el TPI al declarar Ha Lugar la demanda sin que se configurasen los requisitos de la acción por persecución maliciosa. No tienen razón.

La persecución maliciosa o uso injustificado de los procedimientos legales constituye la radicación maliciosa y sin causa de acción probable, de un proceso criminal o civil contra una persona, que produce daños a ésta. ■ Siendo la malicia un elemento esencial de la persecución maliciosa, en nuestro ordenamiento se le cataloga como una acción en daños y perjuicios causados por conducta torticera intencional bajo el Artículo 1802 del Código Civil, 31 L.P.R.A §5141. Esta causa de acción ha sido muy desfavorecida en nuestro ordenamiento. Se ha reiterado en numerosas ocasiones la doctrina general de que en nuestra jurisdicción no se reconoce la existencia de la acción en daños y perjuicios como consecuencia de un pleito civil. ■

No obstante, examinado el expediente del presente caso, no es necesario que ejerzamos nuestra función revisora para determinar si se cumplieron o no los elementos de esta causa de acción. Si bien es cierto que el demandante-apelado alegó como una de sus causas de acción la persecución maliciosa, ésta no fue su única reclamación. Más importante aún, la Sentencia apelada no contiene expresión alguna referente a la persecución maliciosa. El TPI determinó que los demandados-apelantes causaron daños al demandante-apelante, pero no por persecución maliciosa, sino de la culpa o negligencia que surgen bajo el palio del Art. 1802 del Código

Civil, 31 L.P.R.A. §5141. En vista de ello, resulta forzoso concluir que el primer error no fue cometido.

Por estar estrechamente relacionados discutiremos los señalamientos de error segundo, tercero y quinto. Expresan los demandados-apelantes que incidió el TPI al concluir que éstos tenían 10 cotorras y varias aves exóticas cuando, alegadamente, la prueba desfilada demostró que, "*si acaso*", tuvieron 4 "*cockatieles*". Añaden que erró el TPI al hacer determinaciones de hechos basadas en inferencias y relacionadas a la naturaleza de estas aves, cuando no se presentó prueba de dicha naturaleza o de la intensidad del ruido que hacen. No tienen razón.

Es norma claramente establecida que en ausencia de pasión, prejuicio, parcialidad o error manifiesto, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad realizada por el tribunal de primera instancia. *S. L. G. Rodríguez v. Nationwide Insurance*, 156 D.P.R. 614, 630 (2002); *Argüello López v. Argüello*, 155 D.P.R. 62 (2001); *Trinidad v. Chade*, 153 D.P.R. 280 (2001); *Rolón García v. Charlie Car Rental, Inc.*, 148 D.P.R. 420 (1999); *López Vicil v. I.T.T. Intermedia, Inc.*, 142 D.P.R. 857 (1997). De ordinario, un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello, ante*. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia, por cuanto es ese juzgador quien suele estar en mejor posición para aquilatar la prueba testifical desfilada, y además, es quien tuvo el beneficio de oír y ver declarar a los testigos. *Id.* El juez sentenciador es quien tiene la oportunidad de observar la manera de declarar de los testigos, lo cual, incluye el poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones. De este modo puede ir formando gradualmente en su conciencia la mejor convicción en cuanto a si dicen la verdad. *Argüello v. Argüello, ante*.

Esta norma de deferencia es particularmente cierta cuando están envueltas cuestiones altamente subjetivas, ya que el juzgador de los hechos que oyó y vio declarar a los testigos y apreció su comportamiento en la silla testifical, es quien está indudablemente en mejor posición para aquilatar la prueba testifical desfilada. *López Vicil v. I.T.T. Intermedia, Inc., ante*.

Ahora bien, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente al foro revisor, puesto que si bien el arbitrio del juzgador de los hechos es respetable, no es absoluto. *Méndez v. Morales*, 142 D.P.R. 26 (1996); *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702 (1990); *Vda. de Morales v. De Jesús Toro*, 107 D.P.R. 826 (1978).

Es cierto que en la determinación de hecho núm. 5, el TPI expone que los demandados-apelantes "*tenían cinco parejas de cotorras. También tienen otras aves exóticas en el patio trasero de las casa*". ■ Es decir, el TPI determinó que los demandados-apelantes tuvieron en su residencia al menos diez aves. No obstante, resolvemos que este error no afecta en ninguna forma la responsabilidad que estableciera el TPI. En la determinación de hecho núm. 9, el TPI indicó que los demandados-apelantes "*tenían cuatro cockatieles y cinco periquitos en la casa*". Además, el examen de la transcripción de la prueba confirma que los demandados-apelantes tuvieron en un momento dado 4 cockatieles y 5 periquitos, es decir 9 aves. ■ Por ende, no es correcta su alegación de que tuvieron "*en todo caso, en algún momento, fueron cuatro (4) cokatieles (sic)*".

En este punto, debemos discutir la aseveración de los demandados-apelantes de que el TPI incidió al fundamentar sus determinaciones de hechos en inferencias relacionadas a la naturaleza de las aves que tenían los demandados-apelantes. Específicamente, aducen que los "*cockatieles y las cotorras no son lo mismo*" y que no se pasó prueba sobre la naturaleza de estas aves y el ruido que generan.

El Tribunal Supremo de Puerto Rico ha sostenido que la negligencia puede ser evidenciada mediante prueba directa o circunstancial. *Colón v. Tiendas Kmart*, 154 D.P.R. 510, 51-522 (2001); *Chévere v. Levis*, 152 D.P.R. 492, 499-500 (2000); *Administrador del F.S.E v. Almacén Ramón Rosa Delgado*, 151 D.P.R. 711

(2000). Reiteradamente, dicho Foro ha subrayado que la prueba o evidencia circunstancial es intrínsecamente igual a la prueba directa. *Colón v. Kmart, ante*; *Chévere v. Levis, ante*; *Pueblo v. Pagan, Ortiz*, 130 D.P.R. 470 (1992); Ernesto L. Chiesa, *Tratado de Derecho Probatorio*, Tomo II, **Publicaciones JTS**, 1998, pág. 1237.

Por su parte, la Regla 10(h) de Evidencia, 32 L.P.R.A. IV, R. 10 (h), dispone que:

*"Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Se entiende por evidencia directa aquélla que prueba el hecho en controversia sin que medie inferencia o presunción alguna, y que de ser cierta demuestra el hecho de modo concluyente. Se entiende por evidencia indirecta o circunstancial aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual -en unión a otros hechos ya establecidos-, puede razonablemente inferirse el hecho en controversia."* (Énfasis suplido.)

La evidencia directa establece un hecho sin la necesidad de inferencias o razonamientos ulteriores. Por el contrario, la evidencia indirecta o circunstancial se caracteriza por requerir el uso de inferencias, o deducciones que se hace en su discernimiento el juez o jurado, fundadas en una serie de hechos probados. Es necesario que exista una relación racional entre el hecho básico probado y el hecho inferido. *Chévere v. Levis, ante.* La característica fundamental de la prueba circunstancial es que la:

*"evidencia ofrecida, aunque fuera creída, no es, de suyo, suficiente para probar el hecho que se pretende probar con ella, sino se requiere un proceso de inferencias en conjunción a otra evidencia ya admitida o por admitirse, o un razonamiento basado en la experiencia y las inferencias que hace una persona razonable."* E. L. Chiesa, *op. cit.*, a la pág. 1239. (Énfasis nuestro.)

Se trata de que las circunstancias apunten en dirección favorable a la inferencia. Ernesto L. Chiesa, *op. cit.* Al evaluar la prueba circunstancial, el juzgador debe reconocer la distinción entre aquélla que es mera conjetura y la que es una inferencia razonable. *Bacó v. Almacén Ramón Rosa*, 151 D.P.R. 711 (2000); E. L. Chiesa, *op. cit.*, a la pág. 1240.

Ahora bien, la prueba presentada, ya sea directa o circunstancial, debe ser suficiente en derecho, o sea, debe producir la certeza o convicción en un ánimo no prevenido. *Pueblo v. Rodríguez Román*, 128 D.P.R. 121 (1991). En los casos civiles, las determinaciones de hechos se hacen a base de la preponderancia de la prueba. *P.P.D. v. Admor. Gen. de Elecciones*, 111 D.P.R. 199 (1981). De conformidad con lo anterior, es necesario probar los hechos que con mayor probabilidad ocurrieron, aunque no se requiere certeza matemática. *Elba A.B. M. v. U.P.R.*, 116 D.P.R. 88 (1985); *Núñez v. Cintrón Ortiz*, 115 D.P.R. 598 (1984).

A la luz de doctrina previamente esbozada, y luego de analizados los alegatos de las partes y la transcripción de la prueba, debemos concluir que los argumentos planteados por los demandados-apelantes no nos convencen. El TPI encontró demostrado que los demandados-apelantes tuvieron al menos 9 aves en su residencia y que las mismas durante años molestaron al demandante-apelado y a sus hijos con su ruido. No hace falta ser un experto y pasar prueba científica sobre la naturaleza y ruido que generan las aves de pico curvo, para saber que tener por lo menos nueve de éstas, ya fuesen cockatieles o cotorras, genera mucho ruido. Dicho sea de paso, coincidimos con el análisis del TPI en que a través de la evidencia presentada, en particular el testimonio del demandante-apelado, se desfiló prueba de la intensidad del ruido que producen dichas aves.

A su vez, el TPI concluyó que como consecuencia de los ruidos de las aves y de la situación tirante con los demandados-apelantes, el demandante-apelado desarrolló una condición de depresión y tuvo que comprar otra residencia y mudarse. No nos parecen irrazonables dichas inferencias. Examinada la transcripción de la prueba oral presentada y ante la ausencia de prejuicio, parcialidad o error manifiesto en la apreciación de la prueba hecha por el TPI, no intervendremos con la misma. Resolver lo contrario, sería entrar al campo de las conjeturas

y especulaciones, actuación contraria a la norma vigente en nuestro ordenamiento jurídico.

En su cuarto señalamiento de error, los demandados-apelantes sostienen que erró el TPI al tomar conocimiento judicial sobre la naturaleza de las aves en controversia y la intensidad del ruido que hacen, de una fuente no confiable, hallada en la Internet. Aducen que con ello tergiversó y encontró apoyo a las inferencias que hizo. Tampoco les asiste la razón.

La Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV, R. 11, en lo pertinente, establece que:

*"(A) Los tribunales podrán tomar conocimiento judicial de hechos que no son razonablemente objeto de controversia por:*

*(1) Ser de conocimiento general dentro de la jurisdicción territorial del tribunal, o (2) ser **susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada.***" (Énfasis provisto.)

Como vemos, el texto de la precitada Regla 11 de Evidencia, *ante*, ofrece dos (2) dimensiones. A su amparo, el juzgador de instancia y los foros apelativos podemos tomar conocimiento judicial de hechos que *"no tienen que ser de conocimiento general; pudiera tratarse de un hecho que casi nadie conoce. Lo esencial es que pueda averiguarse indubitadamente, con prontitud y precisión, acudiendo a fuentes de incuestionable confiabilidad"*. E. L. Chiesa, *op. cit.* Tomo I, pág. 28. Además, la Regla 11 de Evidencia, *ante*, recoge la casuística anteriormente pautada en *Colón v. San Patricio Corporation*, 81 D.P.R. 242, 273 (1959), sobre información que puede *"ser objeto de exacta e inmediata demostración recurriendo a fuentes de fácil acceso y de indisputable precisión...."*.

Para que una tribunal pueda tomar conocimiento judicial es necesario que se le brinde a la parte contraria una oportunidad adecuada de confrontarse con dicha prueba y de explicar o rebatir la misma. No le corresponde a un tribunal introducir criterios *"que los demandados se ven imposibilitados de rebatir y contrarrestar"*. *Ríos Ruiz v. Mark*, 119 D.P.R. 816, 829 (1987). ■ Ahora bien:

*"si se toma conocimiento judicial sin antes dar oportunidad a las partes de que manifiesten su parecer, debe atender a la parte que pide reconsideración...**La oposición a que se tome conocimiento judicial debe ser oportuna. Salvo error craso, un tribunal apelativo no atenderá a un señalamiento de error hecho por primera vez en el foro apelativo.***" E. L. Chiesa, *op. cit.*, a las págs. 1147-1148.

En la situación de autos, el TPI tomo conocimiento judicial del artículo Mary Beth Volleber, *"Help, My Bird Screaming is Driving Me Crazy"*, The National Cockatiel Society, disponible en la página cibernética de la National Online Pet Consultant, para indicar que *"el cockatiel y el periquito son de la familia de las (sic) papagayos y cotorras. Hablan, gritan, silban a diversas horas. Los cockatieles en particular son criaturas que reaccionan con entusiasmo a diversos estímulos. Siempre de forma ruidosa"*. ■ Aunque el TPI no les brindó a los demandados-apelantes una oportunidad adecuada de confrontarse con dicha prueba antes de emitir su dictamen, de acuerdo a la norma jurídica antes expresada, los demandados-apelantes pudieron pedir oportunamente la reconsideración al TPI y no lo hicieron. Examinada la *"Moción de Reconsideración y en Solicitud de Determinaciones de Hechos y Conclusiones de Derecho Adicionales"*, no encontramos que los demandados-apelantes cuestionaran que el TPI tomase conocimiento judicial de la publicación en cuestión. En vista de que no se cuestionó oportunamente la toma de conocimiento por parte del TPI y de que no estamos ante un caso en el cual haya mediado error craso y manifiesto en la apreciación de la prueba, no habremos de intervenir con la determinación del TPI de tomar conocimiento judicial sobre la naturaleza de las aves origen de la controversia. Dicho sea de paso, reiteramos que no hay que ser un perito en zoología para saber lo ruidosas que las carolinas (cockatieles) y los periquitos pueden ser. Mucho más aún en residencias contiguas a corta

distancia entre si, separadas meramente por una verja de alambre eslabonado. ■

En el sexto señalamiento de error, los demandados-apelantes aducen que incidió el TPI al no hacer determinaciones de hechos de conformidad a la prueba presentada. Los demandados-apelantes que la prueba desfilada no sostiene las conclusiones a las que llegó el TPI. A su vez, los demandados-apelantes sostienen que erró el TPI al no incluir determinaciones relacionadas a su reconvención por alegada persecución maliciosa, privación del uso de su propiedad, abuso del derecho y mala fe por parte del demandante-apelado. No tiene razón.

Como indicáramos anteriormente, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, el foro apelativo no está autorizado a intervenir con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. *Flores v. Soc. de Gananciales*, 146 D.P.R. 145 (1998); *Belk Arce v. Martínez*, 146 D.P.R. 215 (1998). Asimismo, tampoco podemos intervenir con la adjudicación de credibilidad de los testigos realizada por el Tribunal de Primera Instancia si tampoco hay presencia de pasión, prejuicio, error manifiesto o parcialidad. *López Vicil v. I.T.T. Intermedia*, 142 D.P.R. 857 (1997).

Cuando existe conflicto entre las pruebas, corresponde precisamente al juzgador de los hechos dirimirlo. *Flores v. Soc. de Gananciales*, ante, a la pág. 50; *López Vicil v. ITT Intermedia, Inc.*, ante, a la pág. 865; *Pueblo v. Chévere Heredia*, 139 D.P.R. 1, 15-16 (1995). De ordinario, el tribunal de instancia está en mejor posición que un tribunal apelativo para aquilatar la prueba testifical, porque éste tuvo el gran beneficio de poder observar la manera en que los testigos se expresaron y comportaron en la silla testifical ("demeanor"). *Argüello v. Argüello*, 155 D.P.R. 62, 78-79 (2001); *Trinidad v. Chade*, 153 D.P.R. 280, 291 (2001); *Rolón v. Charlie Car Rental, Inc.*, 148 D.P.R. 420, 433 (1999).

En el caso de autos, el TPI escuchó y aquilató el testimonio del demandante-apelado y de los demandados-apelantes, además de evaluar toda la prueba estipulada por las partes. En su adjudicación, el tribunal no le brindó credibilidad al testimonio de los demandados-apelantes y sí al del hoy apelado, David López Castro. Además, examinadas las declaraciones de éste debemos concluir que las mismas no son improbables o de otro modo increíbles. Por consiguiente, no estamos autorizados a intervenir con la adjudicación de credibilidad que hizo el Tribunal de Primera Instancia.

En su séptimo señalamiento de error, los demandados-apelantes aducen que el TPI incidió al no tomar en cuenta la totalidad del testimonio del perito presentado por el demandante-apelado. Los demandados-apelantes sostienen que de haberse tomado en cuenta la totalidad de dicho testimonio, el TPI hubiese concluido que el demandante-apelado padecía de una condición mental preexistente y que estaba obsesionado con los demandados-apelantes. El error no fue cometido.

El alcance de la revisión judicial de la prueba presentada por peritos es distinto al de otros testimonios. Los tribunales revisores tienen amplia discreción en la apreciación de la prueba pericial pudiendo, inclusive, adoptar su propio criterio en la apreciación o evaluación de la misma y hasta descartarla aunque resulte técnicamente correcta. *Mun. de Loíza v. Sucns. Suárez et al.*, 154 D.P.R. 333, 363 (2001); *Martí v. Abréu*, 143 D.P.R. 520 (1997); *Valldejuli Rodríguez v. A.A.A.*, 99 D.P.R. 917 (1971). La razón para ello es que en la apreciación de la prueba pericial, el tribunal revisor está en la misma posición que el tribunal de primera instancia. *Sepúlveda v. Departamento de Salud*, 145 D.P.R. 560 (1998); *Ortiz Rodríguez v. A.F.F.*, 94 D.P.R. 546 (1967).

A su vez, en relación a la apreciación de la prueba pericial, ningún tribunal está obligado a seguir indefectiblemente la opinión, conclusión o determinación de un perito, sobretodo cuando está en conflicto con testimonios de otros peritos. *Zambrana v. Hospital Santo Asilo de Damas*, 109 D.P.R. 517 (1980); *Prieto v. Maryland Casualty Co.*, 98 D.P.R. 594 (1970). Ello se debe a que el valor probatorio del testimonio pericial depende de varios factores, entre los que se destacan los siguientes: 1) las cualificaciones del perito; 2) la

solidez de las bases de su testimonio; 3) la confiabilidad de la ciencia o técnica subyacente; y 4) la parcialidad del perito. *Dye-Tex v. Royal Insurance*, 150 D.P.R. 658 (2000).

En el pleito de marras, el TPI encontró probado los daños morales sufridos por el demandante-apelado, y le dio credibilidad al psiquiatra que fungió como perito del demandante-apelado. Al revisar el testimonio ofrecido por éste, concurrimos con el tribunal apelado. La minuciosa lectura de la transcripción y de los documentos que obran en el expediente no revela que el demandante-apelado recibiese tratamiento psiquiátrico con anterioridad a los hechos que dan base a este pleito, más allá de las evaluaciones psiquiátricas compulsorias del procedimiento de incapacitación por lesión en su columna vertebral. También, se desprende que la condición de depresión surgió a consecuencia de las acciones llevadas a cabo por los demandados-apelantes, lo que requirió un tratamiento psiquiátrico y farmacológico. ■ El TPI le otorgó completa credibilidad al testimonio del Dr. Raúl Correa del cual se puede colegir que el demandante-apelado le manifestó en las sesiones de tratamiento que tenía problemas con los demandados-apelantes por unas aves exóticas. ■ Surge, además, que el propio perito le recomendó que cambiara de residencia. ■

El tribunal aquilató la prueba presentada y le otorgó completa credibilidad a la porción que apuntaba a que la condición de depresión mayor con rasgos sicóticos ■ que presentó el demandante-apelado no era preexistente, ■ como pretenden argumentar los demandados-apelantes.

Por otro lado, en su octavo señalamiento de error, los demandados-apelantes indican que erró el TPI al declarar "*Ha Lugar*" la demanda a partir del incumplimiento del acuerdo suscrito por las partes en el Centro de Mediación de Conflictos, el 22 de octubre de 2001. Con ello, aducen que el estado de derecho aplicable a las partes era la orden de protección recíproca expedida el 21 de enero de 2004 y con vigencia de un año. No tienen razón.

El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A §5141. Daño es todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra. *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 205-206 (1988). La culpa consiste en la omisión de la diligencia exigible, la que si se hubiera empleado podría haber evitado el resultado dañoso. *Toro Aponte v. E.L.A.*, 142 D. P.R. 464, 473 (1997).

El Artículo 1802 del Código Civil, *ante*, enuncia la norma genérica que prohíbe causar daño a otro mediante conducta activa o pasiva. *Soc. Gananciales v. González Padín Co., Inc.*, 117 D.P.R. 94, 105 (1986) Para que exista responsabilidad civil a tenor del Artículo 1802 del Código Civil, *ante*, es necesario que concurran los siguientes elementos: (1) un daño, (2) una acción u omisión negligente, y (3) la correspondiente relación causal entre el daño y la conducta culposa o negligente. *Toro Aponte v. E.L.A.*, *ante*, a la pág. 472 (1997); *Ramírez v. E.L.A.*, 140 D.P.R. 385, 391 (1996); *Monllor v. Soc. de Gananciales*, 138 D.P.R. 600, 604 (1995). El acto u omisión culposa o negligente es toda aquella conducta humana desprovista del cuidado o la diligencia exigible a un hombre prudente y razonable. Es no anticipar o prever las consecuencias lógicas de nuestras actuaciones u omisiones. *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 18 (1987); *Torres Trumbull v. Pesquera*, 97 D.P.R. 338, 343 (1969).

Contrario a lo alegado por los demandados-apelantes y examinada la Sentencia apelada, encontramos que el juzgador evaluó la prueba que le fue presentada y, a la luz de la misma, determinó que la causa adecuada para los daños morales que sufrió el demandante-apelado fue la conducta de los demandados-apelantes. El demandante-apelado se vio perturbado en su vida familiar y el disfrute de su propiedad a tal punto que compró otra residencia y se mudó del lugar. ■ Expresamente, el TPI concluyó que *"[a]quí David López Castro fue perturbado en su tranquilidad por el ruido de las cotorras del vecino. Por quejarse fue objeto del abuso y*

*atropellos de un hombre más joven quien se ensañó con el...".* Nosotros no encontramos base en el récord para llegar a otras conclusiones. Por ende, concluimos que no se cometió el octavo error aducido.

Nos corresponde discutir el último error planteado por los demandados-apelantes, sobre la imposición de honorarios de abogado por temeridad. Respecto a ello, la Regla 44.1 (d) de las de Procedimiento Civil dispone que *"(d) En caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable, el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."* 32 L.P.R.A. III, R. 44.1 (d).

El concepto *"temeridad"* ha sido ampliamente definido por el Tribunal Supremo de Puerto Rico. En términos generales se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Blas v. Hosp. Guadalupe,* 146 D.P.R. 267 (1998); *Torres Ortiz v. E.L.A.,* 136 D.P.R. 556 (1994).

La temeridad no está definida en la regla antes citada, pero el Tribunal Supremo de Puerto Rico ha expresado que *"la temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia".* *Jarra Corp. v. Axxis Corp.,* 155 D.P.R. 764, 779 (2001), citando a *Elba A.B.M. v U.P.R.,* 125 D.P.R. 294, 329 (1990).

De igual manera, el Tribunal Supremo ha expresado que la imposición de honorarios de abogado por temeridad persigue castigar a aquellos litigantes que obligan a otras personas a incurrir en gastos innecesarios al interponer pleitos frívolos, o alargar innecesariamente aquellos ya radicados. La imposición de honorarios por temeridad descansa en la discreción del Tribunal. Sin embargo, en aquellos casos en que los tribunales inferiores abusen de su discreción, los tribunales apelativos podrán revisar su actuación. *Jarra Corp. v Axxis Corp., ante.* Corresponde a la parte apelante demostrar dicho abuso de discreción. *CNA Casualty de P.R. v. Torres Díaz,* 141 D.P.R. 27 (1996). Sabido es, también, que la partida de honorarios de abogado concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Ramírez Anglada v. Club Cala de Palmas,* 123 D.P.R. 339 (1989).

Examinados los autos, coincidimos con el foro apelado y concluimos que el presente es un pleito que pudo haberse evitado, a no ser por la terquedad, obstinación, contumacia e insistencia de los demandados-apelantes, quienes obligaron al demandante-apelado, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. Nada hay en los alegatos ante nuestra consideración, que nos ponga en condiciones de intervenir con la decisión del tribunal recurrido al respecto.

Además, los demandados-apelantes no demostraron que el TPI al emitir su decisión ignorase algún hecho material importante, que sin justificación fundamentara su decisión en un hecho irrelevante, o que sopesara livianamente los hechos materiales del pleito. No habiendo probado el abuso de discreción, confirmamos la decisión del TPI sobre la imposición de honorarios por temeridad.

Ahora bien, luego de haber analizado ponderadamente la prueba y al tomar en cuenta la doctrina antes discutida, estamos convencidos de que la compensación que se le concedió al demandante-apelado por el menoscabo que sufrió en su vida privada y familiar fue excesiva. Nos explicamos.

La finalidad de la indemnización del daño es restablecer al demandante al estado en que se encontraba antes de ocurrirle el daño, esto es devolver las cosas a su estado natural. *Correa v. A.F.F.,* 83 D.P.R. 144 (1961). Sin embargo, ello resulta difícil, y muchas veces imposible. Por lo tanto, en muchas ocasiones se recurre a la alternativa de reparar el daño mediante la concesión de una suma de dinero que se establece como *"equivalente"* a la pérdida sufrida. *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443 (1985); *Galib Frangie v. El Vocero de Puerto Rico,* 138 D.P.R. 560 (1995).

La gestión judicial de estimación y valoración de daños es sumamente complicada y angustiosa porque "*no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano, que permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado*". *Urrutia v. A.A.A.*, 103 D.P.R. 643 (1975).

Por otro lado, la valoración de los daños recae en la sana discreción del juzgador de hechos. *Torres Solís v. A.E.E.*, 136 D.P.R. 302, 311-312 (1994); *Urrutia v. A.A.A.*, 103 D.P.R. 643 (1975). Merece gran deferencia la discreción que ejercitan los tribunales de instancia en su apreciación de los daños, ya que, de ordinario, están en mejor posición de determinarlos por tener contacto directo con la prueba del reclamante. *Blás v. Hospital de la Guadalupe*, 146 D.P.R. 267 (1998); *Torres Solís v. A.E.E.*, *ante*; *Urrutia v. A.A.A.*, *ante*.

Recordemos, además, que no hay dos casos exactamente iguales; cada caso se distingue por sus propias y variadas circunstancias. Es por ello que la decisión que se emita en un caso específico, en relación con la valoración y estimación de daños, no puede ser considerada como precedente obligatorio para otro caso. *Toro Aponte v. E.L.A.*, 142 D.P.R. 464 (1997).

Según expone el distinguido ex Juez de este foro apelativo, Antonio J. Amadeo-Murga, en su libro, *El Valor de los Daños en la Responsabilidad Civil*, First Book Publishing of P.R., Vol. I, Suplemento año 2000, pág. 504, la compensación concedida por la valoración del daño moral por menoscabo de la vida privada o familiar fluctúa desde $4,330.00 hasta $30,802.00. Lo anterior, responde a cambios de nivel de precio, nivel de vida y valor del dólar hasta el año 2000. ██ Comparados lo casos que aparecen en la obra previamente citada, con el caso de epígrafe, resulta forzoso concluir que la compensación otorgada al demandante-apelado fue excesiva y por ello, disminuimos la cuantía de los daños concedidos.

### III

En merito de todo lo antes expuesto, resolvemos MODIFICAR la sentencia apelada a los fines de reducir la cantidad concedida por concepto de daños a $30,000.00 dólares. Así modificada se CONFIRMA.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones