Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JOSÉ ELÍAS BETANCOURT KOCK representado por JOSÉ ELÍAS BETANCOURT ROSARIO<br><br>Apelada<br><br>v.<br><br>RAÚL OSVALDO ORTIZ DÍAZ<br><br>Apelante | KLAN202400847 | Apelación Procedente del Tribunal de Primera Instancia, Sala de AIBONITO<br><br>Caso Núm.: BQ2022CV00004<br><br>Sobre: Solicitud de Injunction Provisional, Preliminar, Permanente |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de diciembre de 2024.

El 13 de septiembre del año en curso, el señor Raúl Osvaldo Ortiz Díaz (en adelante, señor Ortiz o el apelante) compareció ante nos mediante *Apelación* en la que solicita la revocación de la *Sentencia* emitida el 2 de agosto de 2024, notificada el día 5, por el Tribunal de Primera Instancia, Sala Superior de Aibonito (en adelante, TPI o foro primario). Mediante el referido dictamen, el foro primario declaró HA LUGAR la *Demanda* y desestimó la *Reconvención* presentada por el señor Ortiz.

Examinado el expediente ante nos, y en virtud del derecho aplicable que más adelante consignaremos, **confirmamos** la *Sentencia* apelada. Veamos.

-I-

El 25 de enero de 2022, el señor José Elías Betancourt Rosario (en adelante, señor Betancourt o el apelado) en representación del señor José Elías Betancourt Kock (en adelante, señor Betancourt Kock), instó una

Número Identificador

SEN2024 _____

*Demanda* en contra del apelante solicitando un *injunction* al TPI.[1] En esta, alegó ser dueño del siguiente inmueble:

> "RUSTICA: Predio de terreno radicado en el Barrio Palo Hincado de Barranquitas. Con una cabida superficial de 145,902.8179 metros cuadrados. En lindes por el Norte, con Luis De Jesús Rodríguez; por el Sur, con Ángela Sierra, Rafael Torres, Georgie Rodríguez y Santiago Aponte; por el Este, con Andrés Rivera Valencia y Felipe Ortiz Ortiz; y por el Oeste, con José Dolores Hernández, José Ortiz Pacheco y Teodoro Rivera." Consta inscrita al folio 143 del tomo 34 de Barranquitas, finca número 1858, Registro de la Propiedad, Sección de Barranquitas. Catastro número: 246-000-009-08-901

Indicó que adquirió dicho inmueble mediante la escritura número diez (10) sobre Donación y Aceptación, otorgada en San Juan, el 27 de septiembre de 2020, ante el Notario Generoso Rivera Rodríguez. Además, que se halla libre de cargas, más gravada por lo siguiente:

> a. Servidumbre de paso como predio sirviente a favor de la finca #3,512, valorada en $200.00; según consta de la escritura #33, otorgada en Barranquitas, el 28 de septiembre de 1969, ante el notario Rafael A. Martínez Pérez, inscrita al folio 58 del tomo 59 de Barranquitas, inscripción décima de la finca #1,858; registrada con fecha 30 de octubre de 1969.

> **b. Servidumbre de paso como predio sirviente a favor de la finca #3,886, valorada en $200.00; según consta de la escritura #268, otorgada en Barranquitas, el 6 de octubre de 1971, ante el notario Carlos E. Berríos Rojas, inscrita al folio 58 vuelto del tomo 59 de Barranquitas, inscripción undécima de la finca #1,858; registrada con fecha 22 de noviembre de 1971.**

> c. Hipoteca constituida en garantía de pagaré suscrito bajo afidávit #20,564 a favor de Puerto Rico Production Credit Association, o a su orden, por la suma de $20,000.00 de principal, con intereses al 8 3/4% anual, vencedero a la presentación, tasada la finca para en caso de subasta en $20,000.00; según consta de la escritura #203, otorgada en Barranquitas, el 6 de julio de 1987, ante el notario Carlos E. Berríos Rojas, inscrita al folio 65 del tomo 59 de Barranquitas, inscripción decimosexta de la finca #1,858; registrada con fecha 7 de julio de 1987.[2]

En ese sentido, el apelado alegó que la petición de interdicto surgió a raíz de un problema con la servidumbre de paso a favor de la finca núm. 3886; de la cual es dueño. Adujo que, según surge del Registro de la Propiedad, la servidumbre de interés se describe de la siguiente forma:

---

[1] El señor Betancourt es el padre del señor Betancourt Kock y ostenta un *Poder General* suscrito bajo la escritura número sesenta y siete (67) del 29 de marzo de 2021, en San Juan, Puerto Rico, ante la Notario Marta T. Rey Cacho. Por tanto, su comparecencia como demandante es en representación de su hijo.

[2] *Exhibit* IV del Recurso de *Apelación*, págs. 37-38.

---Camino de once metros de ancho que discurre de Sur a Norte y por toda la colindancia Oeste de la finca segregada y descrita en el hecho segundo y que comienza en la carretera estatal número ciento cincuenta y seis y discurre por la colindancia Oeste de dicha finca.

Dicho esto, el apelado alegó que el señor Ortiz lo privó de acceso a su propia finca al colocar un portón con candado al principio de la servidumbre. Asimismo, reclamó que, sin autorización, el apelante entró maquinaria a la servidumbre, ensanchó y alteró el camino original, y utilizó herbicidas, y colocó postes eléctricos en y fuera de la servidumbre en los predios del apelado provocando daños a la finca sirviente. De igual modo, adujo que el apelante pretende establecer un negocio y utiliza la servidumbre de paso como si fuese uno de uso público. Ante esto, el apelado alegó que el señor Ortiz lo despojó y perturbó de su posesión, causándole daños reales e irreparables a su finca. Por esto, solicitó al foro primario que emitiera una orden para que la parte apelante cese y desista de sus acciones, que a costa del apelante se revierta la finca a su estado original previo a sus actos y que se imponga restricciones en el uso de la servidumbre.

El 3 de marzo de 2022, se celebró la vista de *injunction* preliminar. Allí, se ordenó al apelante a remover el candado del portón. También, se establecieron las fechas para contestar la demanda; la reunión de las partes junto con sus peritos agrimensores para determinar si hubo una alteración de la servidumbre, según fue constituida; y, para someter el informe de conferencia inicial.

El 9 de marzo de 2022, el señor Ortiz presentó su *Contestación a Demanda* en conjunto a su *Reconvención*. Al contestar la reclamación, negó en gran parte las alegaciones de la *Demanda*. Particularmente, rechazó haber impedido el acceso al apelado a su finca y arguyó que el portón siempre ha existido y que le entregó una llave al señor Betancourt. Además, que el apelado tiene acceso cómodo, pavimentado y razonable a su finca por otro

lado, el cual está utilizando. De otro lado, en su *Reconvención*, el señor Ortiz aseveró que el señor Betancourt ha violentado su derecho al disfrute pacífico de su propiedad, pues ha entrado sin autorización a su propiedad para hostigar e interrumpir a un obrero. También, expuso que tiene planes de construir un proyecto en su finca, que a esos efectos solicitó unos permisos a la Oficina de Permisos del Municipio (OMP) de Barranquitas e incurrió en gastos a tales fines y que el apelado de mala fe acudió a dicha oficina para impedir que estos se expidieran. Por ello solicitó $100,000.00 en compensación por pérdidas sufridas, daños y perjuicios.

El 18 de marzo de 2022, el señor Betancourt contestó la reconvención. Al hacerlo, alegó que el señor Ortiz removió y reemplazó la verja que existía por el portón relacionado a la disputa, por lo cual la llave que se le entregó no corresponde al candado nuevo impuesto. De igual forma, negó haber interferido en el uso y disfrute de la propiedad del apelante, así como haber interrumpido las labores u hostigado a los obreros. Afirmativamente, adujo que junto con otros vecinos acudieron mediante misiva al Municipio de Barranquitas (Municipio) para expresarse en oposición al establecimiento de un comercio; propósito del proyecto que el apelante intentaba establecer en la propiedad. Por último, manifestó no ser responsable de las pérdidas económicas alegadamente sufridas por el apelante, ya que no puede ordenar al Municipio que no expida los permisos solicitados.

Después de varios trámites procesales, el Juicio en su Fondo se celebró los días 24 y 25 de octubre de 2023 y el 6 de junio de 2024. Ese último día, también se efectuó una inspección ocular. El 2 de agosto de 2024, el TPI emitió la sentencia apelada, en la que estableció como hechos estipulados por las partes lo siguiente:

> 1. El co-demandado, Raúl Osvaldo Ortiz Díaz, es dueño de una finca de 12.00 cuerdas de terreno, equivalentes a 47,164.60 metros cuadrados, localizado en el Barrio Palo Hincado de Barranquitas, Puerto [Rico]. La adquirió de Wilfredo Ortiz Fernández y Gladys Ortiz Zayas, mediante la escritura número 88 de compraventa, otorgada el día 21 de marzo de 2006 ante el Notario Carlos Berríos

Beauchamp y desde entonces la ha poseído en concepto de dueño y con título.

2. La anterior es la finca número 3886 inscrita en el Registro de la Propiedad de Barranquitas al folio 144 del tomo 34 de Barranquitas.

3. La finca número 3886 se segregó de la finca número 1858, la cual originalmente fue de 150.33 cuerdas. Luego de varias segregaciones el remanente de la finca número 1858 quedó en 145,902.8179 metros cuadrados, equivalente a 37.1217 cuerdas, inscrita a favor de Luis Guillermo Rodríguez. Finca que fue donada al Demandante José Elías Betancourt Kock mediante la escritura # 10 sobre Donación y Aceptación, otorgada en San Juan, Puerto Rico el 27 de septiembre de 2020 ante el Notario Generoso Rivera Rodríguez.

4. Mediante la escritura número 268 otorgada el 6 de octubre de 1971 ante el Notario Carlos Berríos Rojas, se constituyó una servidumbre de paso a favor de la finca adquirida por el co-demandado reconveniente, Raúl Osvaldo Ortiz Díaz, el cual es el predio dominante y el remanente, o sea, la finca número 1858 es el predio sirviente.

5. Dicha servidumbre se describe como sigue: Camino de once metros de ancho que discurre de Sur a Norte por toda la colindancia Este de la finca segregada y que comienza en la Carretera Estatal Número 156 y discurre por la colindancia Oeste de dicha finca. Se valoró en $200.00.

6. También, de la finca 1858 y mediante la escritura número 33 del 28 de septiembre de 1965 se constituyó servidumbre de paso real y perpetua como predio sirviente a favor de la finca número 3512 del Lcdo. Felipe Ortiz como predio sirviente.

7. No hay controversia en cuanto a la ubicación de los puntos de la servidumbre.

Así las cosas, después de haber escuchado y aquilatado la prueba desfilada, el foro recurrido formuló las siguientes determinaciones de hechos:

1. Según dispuesto por el tribunal, "Discutidas todas las contenciones y argumentos de las partes, la parte demandada reconoció que lo que tiene es un derecho a la servidumbre de paso por la finca del demandante, según fue constituida y a que no se menoscabe el disfrute de la misma; ello significa que no tiene dominio del terreno por donde discurre el camino, incluyendo el punto donde está instalado el portón, por lo que no puede ejercer actos de dominio como lo es colocar un portón con candado en contra de la voluntad del demandante, propietario de la finca sirviente o a realizar mejoras que afecten el derecho de propiedad del demandante. Con el consentimiento de todas las partes se emite orden disponiendo que de inmediato el demandado debe remover el candado del portón y podrá en 10 días sustituir el mismo por algún tipo de pestillo que no requiera llave de modo que el demandante y las personas autorizadas por el a acceder a la finca puedan abrir el portón y entrar libremente.

2. La servidumbre comienza en la carretera 156 y su ancho es de 11 metros.

3. De ninguna de las escrituras surge el largo de la servidumbre.

4. La servidumbre es el único acceso a la finca número 3886.

5. La servidumbre no es de uso público.

6. La servidumbre está inscrita en el Registro de la Propiedad desde 1971.

7. Ambos peritos coinciden en los puntos de las colindancias.

8. El testimonio y el plano preparado por el agrimensor José Vicente Guillén le mereció entero crédito al tribunal.[3]

9. La servidumbre se extiende desde la carretera 156 hasta el hito de hormigón según marcado en el plano preparado por el agrimensor Guillén y que se pudo apreciar por el tribunal en la inspección ocular.

10. Luego del hito de hormigón la parte demandada extendió el camino para hacer más cómodo el acceso de entrada a las facilidades construidas en la finca número 3886.

11. Las facilidades para área recreativa construidas en la finca número 3886 consisten en una casita en madera para alojamiento, vagón para área de restaurante con barra, mesas, cocina y baños para el público. También se encuentra un área para animales campestres.

12. Se pudo observar movimientos de terreno desde el talud de arriba donde se encuentran las facilidades hacia el camino nuevo y desde el camino nuevo hacia el terreno de la parte demandante.

13. Se pudo observar, de los testimonios del demandante y perito Guillén, como también surge del área marcada rosa del plano preparado por el agrimensor Guillén que el movimiento de terreno creó una especie de "terreno invadido" o nuevo hacia la finca número 1858.

14. El área marcada rosa en el plano preparado por el agrimensor Guillén se describió como la zona invadida por el exceso de movimiento de tierra y que mide unos 504 metros cuadrados.

15. Los movimientos de terreno han causado escorrentías.

16. Los movimientos de terreno fueron hechos sin los permisos correspondientes (Plan CES).

17. Como parte de la prueba de la inexistencia de la servidumbre en el área donde está el camino que brinda acceso al área nueva se pudo observar la destrucción de una poceta de agua.

18. Al borde de la finca número 1858 con la servidumbre se instalaron postes del tendido eléctrico. Dos (2) postes del tendido eléctrico están ubicado[s] en el terreno de la parte demandante y un (1) poste ubicado en la servidumbre.

19. Los postes del tendido eléctrico instalados no son de utilidad para el predio sirviente o la parte demandante.

---

[3] El nombre correcto del perito-agrimensor es Ing. José Vicente **Gallén** Ortiz.

20. La topografía del área es denominada "escarpada".

21. Del testimonio de las partes y la vista ocular este Tribunal pudo colegir que en efecto hay una acumulación de terreno removido a los costados del área extendida, área nueva y ensanchada.

22. No mereció credibilidad el testimonio de la parte demandada a los efectos que el Sr. José Elías Betancourt Rosario haya entrado sin autorización al predio de la parte demandante para dar órdenes e interrumpir labores u hostigar obreros.

23. El 16 de julio de 2020 el Sr. Raúl O. Ortiz Díaz radicó mediante un gestor una solicitud de permiso único (caso número 2020-316817-PU-033430) a través de la OGPe.

24. Confirmado por el Municipio de Barranquitas mediante carta de 26 de mayo de 2022, dicha solicitud fue archivada desde el 31 de julio de 2020.

25. La querella 2020-SRQ-005679 presentada el 13 de julio de 2020 relacionada a dicho permiso fue por un tercero que no es parte en este caso.

26. El demandado hizo movimiento de terrenos sin los permisos correspondientes, ya sean de construcción o consulta de ubicación.

27. No mereció credibilidad el testimonio del Sr. Raúl O. Ortiz Díaz a los efectos que desconocía o que no le hubiera dado autorización a su padre y hermano para intervenir por él en el acuerdo llevado a cabo al dictarse sentencia para el injunction de este caso.

Así establecido, el TPI ordenó al apelante al cese y desista de los actos que atentan contra la propiedad del apelado. Además, estableció que este debía a su costo, y en la medida en que profesionalmente se determinara, a regresar el predio de terreno del apelado a su estado original; a instalar una verja hasta el borde de la servidumbre; le impidió instalar candados en los portones que dan acceso a la finca de este y le advirtió que no podía utilizar la servidumbre de paso como camino de uso público. Sobre esto último, enunció lo que a continuación transcribimos:

> La servidumbre por su naturaleza es para uso exclusivo del dueño del predio dominante, pero no se ha constatado como un predio de Uso Público para que sea utilizado por terceros ajenos. Al no poseer permiso alguno para utilizar su predio o área como alojamiento, o como restaurante, entre otros, el demandado no podrá utilizar la servidumbre para dar acceso a su terreno a terceros. Se le instruye al demandado, que no puede actuar de forma unilateral en las decisiones concernientes al espacio que constituye la servidumbre de paso y los predios aledaños pertenecientes al demandante.

> Por todo lo cual, este tribunal dicta Sentencia declarando **HA LUGAR** la Demanda y se desestima la **Reconvención** presentada

por Raúl Osvaldo Ortiz Díaz**.** En su consecuencia se condena al demandado al pago de costas, gastos y la suma de ***$5,000.00*** en honorarios de abogado.

Así pues, y en virtud de ello, declaró Ha Lugar la Demanda y desestimó la Reconvención presentada por el apelante, ordenándole a este al pago de costas, gastos y la suma de $5,000.00 en honorarios de abogado. Inconforme con lo resuelto, el 20 de agosto de 2024, el apelante solicitó reconsideración del dictamen emitido. Atendida la misma, el 22 de agosto de 2024, el TPI la declaró No Ha Lugar. En desacuerdo aún, el 13 de septiembre del año en curso, el señor Ortiz presentó el recurso de epígrafe, así como un *Proyecto de Exposición Narrativa Estipulada*. En su recurso de apelación, reclamó que el TPI se equivocó y cometió error al:

> […] al expresar que estaba impedido de darle acceso a terceras personas a través de la servidumbre a su predio de terreno, a pesar de que es la única entrada y salida de acceso que tiene su finca, provocando con dicha determinación una violación crasa y limitación al derecho de propiedad que éste ostenta sobre su predio el cual está garantizado por la constitución del Estado Libre Asociado de Puerto Rico; provocando que éste no pueda realizar reuniones familiares y/o con amistades en su predio e incluso le impide que éste pueda ejercer funciones como agricultor bona fide, el cual inexorablemente necesita empleados y éstos estarían impedidos de discurrir por la servidumbre.

> […] al concluir que el acceso a la finca del demandante es a través de la servidumbre de paso, por lo que le ordenó no impedirle al apelado el "libre uso y disfrute de su finca con candados en los portones", pese a que el propio apelado declaró bajo juramento que el acceso a su finca no es por la servidumbre de paso y que de la inspección ocular quedó demostrado que la entrada a la finca del demandante no es por la servidumbre de paso, e incluso el propio perito del apelado y sus testigos declararon que el acceso de la finca del apelado es por otra entrada, por lo que no se sostiene la determinación de hecho esbozada por el TPI de que el apelante le ha estado impidiéndole al demandante el libre uso y disfrute de su finca.

> […] al ordenarle instalar una verja hasta el borde de la servidumbre, a pesar de que el apelado no solicitó dicho remedio, y la prueba desfilada el apelado demostró que para realizar el negocio de cáñamo le requerían que el predio estuviera verjado por lo que la construcción de cualquier verja en el borde de la servidumbre hacia el predio del apelado le correspondía a este y no a él.

> […] al ordenarle que a su costo se regrese el predio a su estado original, sin indicar con especificidad qué área o porción y al obviar que la naturaleza es sabia y esta siempre vuelve a su estado original.

[…] al imponerle la suma de $5,000.00 por concepto de honorarios de abogado aunque no hubo una determinación de temeridad de su parte, pues los peritos de ambas partes concluyeron que la servidumbre era de 11 metros por lo que la alegación de que la ensanchó no se sostiene.

[…] al no enumerar e identificar toda y cada una de la prueba documental admitida y/o estipulada como evidencia y no realizar un análisis "in toto" del contenido de tales documentos, más la prueba testifical vertida en juicio.

[…] al desestimar su reconvención, cuando demostró que el apelado sometió ante el Municipio de Barranquitas documentos de un caso que no guardaba relación con él y que este le mintió al Municipio de Barranquitas al indicarle que había un asunto *subjudicie* ante el tribunal, cuando no había iniciada causa de acción alguna para detener el proyecto Ecoturístico, provocándole pérdidas económicas; demostrándose perjuicio, pasión y parcialidad por parte del tribunal.

[…] al actuar con pasión, perjuicio y parcialidad y cometer error manifiesto en el análisis efectuado de la prueba.

Atendido el recurso, el 17 de septiembre de 2024, emitimos *Resolución* en la que concedimos al apelado para que informara si la exposición narrativa de la prueba sometida fue estipulada. A su vez, se le informó del término dispuesto en nuestro reglamento para que se pronunciara con respecto al recurso de epígrafe.

El 20 de septiembre de 2024, la parte apelada presentó *Moción en Cumplimiento de Orden* en la que informó no haber estipulado la exposición narrativa presentada por la parte apelante. Ante este hecho, mediante *Resolución* del 24 de septiembre de 2024, notificada el 26, le concedimos 30 días para notificar si estipulaba la prueba narrativa presentada. Según allí se dispuso, cumplido este plazo, la parte apelada tendría 5 días para presentar su alegato en oposición.

El 30 de septiembre de 2024, el señor Ortiz presentó *Réplica a "Moción en Cumplimiento de Orden"*. Por su parte, el 11 de octubre del año en curso, el señor Betancourt presentó *Contestación a Recurso de Apelación*. Así las cosas, el 28 de octubre de 2024, las partes sometieron *Exposición Narrativa Estipulada*. Por consiguiente, y con el beneficio de la comparecencia de

ambas partes, así como de la estipulación de la exposición narrativa, damos por sometido el asunto y procedemos a resolver.

-II-

A.

Es sabido que la tarea principal de los tribunales apelativos es examinar cómo los tribunales inferiores aplican el derecho a los hechos particulares de cada caso. El desempeño de esta función revisora se basa en que el Tribunal de Primera Instancia haya desarrollado un expediente completo que incluya los hechos que haya determinado ciertos según la prueba que le fue presentada. Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013). Así pues, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, establece que las determinaciones de hechos que toma el foro primario a base de testimonio oral "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". De igual manera, la Regla 110 de Evidencia, 32 LPRA Ap. VI dispone que "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".

Por razón de lo consignado en el párrafo anterior, es norma reiterada que cuando se le solicita a un foro apelativo que revise cuestiones de hechos, la apreciación de la prueba, en primera instancia, le corresponde al tribunal sentenciador ya que estos tienen la oportunidad de observar y oír a los testigos, y por ello, están en mejor posición de evaluarla. Pueblo v. Acevedo Estrada, 150 DPR 84, 98-99 (2000); López Vicil v. ITT Intermedia, Inc., 142 DPR 857, 865 (1997). En ese sentido, la evaluación del foro sentenciador merece respeto y deferencia. González Hernández v. González Hernández, 181 DPR 746, 776 (2011).

Asimismo, es norma fundamental hartamente conocida que, en nuestro ordenamiento jurídico, salvo evidencia de pasión, prejuicio, parcialidad o error manifiesto los foros revisores no intervendrán con la apreciación de la prueba, la adjudicación de credibilidad o la formulación de determinaciones de hechos por parte del Tribunal de Primera Instancia. TEC General v. AEE, 210 DPR 632 (2022), citando a Santiago Ortiz v. Real Legacy et al., 206 DPR 194, 219 (2021); Santiago Montañez v. Fresenius Medical, 195 DPR 476, 490 (2016); Dávila Nieves v. Meléndez Marín, *supra*. Cónsono con ello, por lo general, "los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio." Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31, 65 (2009).

En cuanto a la pasión, el prejuicio o la parcialidad aludida en el párrafo anterior, es importante señalar que a diferencia de cuando alguna de esta conducta se reclama al amparo de la Regla 63 de Procedimiento Civil que rige la recusación de un juez o una juez, "la pasión, el prejuicio o la parcialidad que puede dar base a la revocación de un dictamen por un foro de mayor jerarquía no necesariamente surge de situaciones conocidas antes del juicio ni de algún conflicto individual y específico entre el adjudicador y una de las partes, sus abogados o testigos, sino que tiende a manifestarse durante el proceso mismo, particularmente, durante el juicio en los méritos." Dávila Nieves v. Meléndez Marín, *supra*, a la pág. 776. Debido a que lo que se impugna es la adjudicación de credibilidad y la determinación de los hechos, la conducta, participación y expresiones del magistrado durante el proceso judicial serán los elementos que se tomarán en consideración para evaluar si, en efecto, este incurrió en pasión, prejuicio o parcialidad. *Íd.*

Lo que constituye pasión, prejuicio o parcialidad dependerá de las circunstancias particulares de cada caso. Si la conducta del juzgador de instancia demuestra que su evaluación de la prueba y sus determinaciones de hechos fueron producto de valores, creencias, opiniones y concepciones personales ajenas al derecho, ello supone que no adjudicó la controversia con la imparcialidad, la objetividad y el desinterés que garantizan un proceso justo. En síntesis, ante una alegación de pasión, prejuicio o parcialidad, los foros apelativos debemos evaluar si el juez o la jueza cumplió su función judicial de adjudicar la controversia específica conforme a derecho y de manera imparcial, pues solo así podremos descansar con seguridad en sus determinaciones de hechos. *Íd.*

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz. <u>Gómez Márquez et al. v. El Oriental</u>, 203 DPR 783 (2020).[4] De ahí que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd.* Cuando la alegación es de pasión, prejuicio o parcialidad, los foros apelativos debemos verificar primordialmente si el juez de primera instancia cumplió su función de adjudicar de manera imparcial, pues solo así podremos descansar en sus determinaciones de hechos. *Íd.*

En cambio, el error manifiesto ocurre cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de

---

[4] Citando a <u>Dávila Nieves v. Meléndez Marín</u>, *supra*.

hecho del Tribunal. *Íd.* Este estándar de revisión restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en que, de la prueba admitida, no exista base suficiente que apoye su determinación. *Íd.* Diferencias de criterio jurídico no alcanzan ese estándar. *Íd.*

Ahora bien, la regla de deferencia antes descrita se exceptúa cuando se trata de determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. González Hernández v. González Hernández, 181 DPR 746 (2011); Ortíz, et al. v. S.L.G. Meaux, 156 DPR 488, 495 (2002). De modo que los tribunales revisores estamos en igual posición que el tribunal de primera instancia al evaluar la prueba pericial y documental. *Íd.* Bajo dicho crisol doctrinario, cuando el testigo es un perito, al momento de determinar si adopta o descarta su testimonio, el foro de instancia deberá considerar: 1) las cualificaciones del perito; 2) la solidez de su testimonio; 3) la confiabilidad de la ciencia o técnica utilizada; 4) la parcialidad del perito. Dye-Tex PR, Inc. v. Royal Ins. Co., PR, 150 DPR 658 (2000). En consideración de estos criterios, el juzgador determinará el valor probatorio que le extenderá a dicho testimonio. Toda vez que el juzgador de hechos no está obligado a aceptar las conclusiones de un perito, si luego de evaluar su testimonio concluye que no le merece credibilidad, tiene la facultad de rechazarlo. SLG Font Bardón v. Mini Warehouse, 179 DPR 322 (2010). Como foro apelativo, estamos en plena libertad de adoptar nuestro criterio propio en la apreciación y evaluación de la prueba pericial. Culebra Enterprises Corp. v. E.L.A., 143 DPR 935 (1997); Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R., *supra.*

B.

La posesión ʼ[e]s la tenencia de una cosa o el disfrute de un derecho por una persona˝.[5] La misma, se ejerce en los bienes por la misma persona que los tiene y los disfruta, o por otra en su nombre.[6] Si bien la posesión es la tenencia o el disfrute, la misma puede ser en uno de dos conceptos: ʼ*(a) en el de dueño; o (b) en el de tenedor, para conservarlos o disfrutarlos, perteneciendo el dominio a otra persona˝*. 31 LPRA Sec. 7825. Así, el Código Civil dispone que todo poseedor tiene derecho a que su posesión sea respetada. De no ser así, este deberá ser amparado o restituido en dicha posesión "por los medios que la ley procesal establece".[7]

En virtud de lo hasta aquí articulado, se autoriza la intervención del andamiaje judicial para tutelar la posesión como hecho de todo poseedor. Miranda Cruz y otros v. S.L.G. Ritch, 176 DPR 951, 960 (2009) al citar a J.R. Vélez Torres, *Curso de Derecho Civil: Los Bienes, Los Derechos Reales*, 5ta ed., Madrid, Ed. Offirgraff, 2005, T. II, pág. 132. Así, el Código de Enjuiciamiento Civil recoge los preceptos necesarios para lograr la protección interdictal en sus Artículos 690 al 695 sobre *Injunctions para recobrar la posesión de propiedad inmueble*. 32 LPRA, Secs. 3561 – 3566. Sobre ello, el Artículo 690 del Código de Enjuiciamiento Civil dispone que:

> Se concederá un injunction para retener o recobrar la posesión material de propiedad inmueble, a instancia de parte interesada, siempre que ésta demuestre, a satisfacción del tribunal, que ha sido perturbada en la posesión o tenencia de dicha propiedad por actos que manifiesten la intención de inquietarle o despojarle, o cuando haya sido ya despojada de dicha posesión o tenencia.[8]

Como puede apreciarse, el antes transcrito artículo dispone, en síntesis, que para poder deducir con éxito la acción posesoria, es necesario aseverar y establecer el hecho de que el demandante, dentro del año precedente a la fecha de presentación de la demanda, estaba en posesión

---

[5] 31 LPRA Sec. 7821.
[6] 31 LPRA Sec. 7824.
[7] 31 LPRA Sec. 7862.
[8] 32 LPRA Sec. 3561.

del bien objeto del pleito, si se trata de recobrarlo, o si lo estaba y está, si se trata de retenerlo. Debe también constatarse que ha sido perturbado o despojado de la posesión o tenencia, describiéndose los hechos constitutivos de la perturbación o despojo, así como si tales actos fueron realizados por la persona demandada o por otra persona por orden de aquél. Miranda Cruz y otros v. S.L.G. Ritch, *supra,* págs. 961-962.

Una demanda de *injunction* posesorio que contenga las alegaciones pertinentes a los recursos de esa naturaleza, aduce hechos constitutivos de la causa de acción.[9] De igual forma, "una demanda que alegue que el demandante posee determinado inmueble, [a]ctos de perturbación y de despojo por los demandados, y que éstos ocupan parte de la finca, detentando así la posesión, es suficiente." Buxeda Jr. v. Escalera, 47 DPR 647, 650 (1934) y otros casos citados en Miranda Cruz v. SLG Ritch, *supra,* a la pág. 962. También es importante determinar, que el demandante estuvo en posesión en determinada fecha dentro del año con anterioridad a la presentación de la demanda y si se le privó de tal posesión. Miranda Cruz v. SLG Ritch, *supra.*[10]

El despojo que da derecho a acudir a solicitar un interdicto posesorio "[e]s aquel que ha sido realizado por el demandado u otra persona por orden de éste, sin intervención judicial." Ramos v. Puig, 61 DPR 83, 85 (1942). No tiene que alegarse que la pérdida de la posesión fue mediante violencia o medios clandestinos. Martorell v. Municipio de Dorado, 70 DPR 380, 383 – 384 (1949). Es el **hecho de la posesión** de una propiedad inmueble, **no el derecho** a su posesión, lo que puede litigarse en acciones interdictales para retener o recobrar la posesión de inmuebles. (Énfasis nuestro) Miranda Cruz y otros v. S.L.G. Ritch, *supra,* a la pág. 967 al citar a Disdier Pacheco v. García, 101 DPR 541, 547 (1973) y demás casos allí

---

[9] *Íd.,* al mencionar a Rivera v. Cancel, 68 DPR 365, 368 (1948).
[10] *Véase,* también E. Fontánez Torresa & R. Ramírez Ballagas, *Derechos Reales,* 80 Rev. Jur. UPR 779, 781 – 783 (2011).

mencionados. Es por lo que el fin de la acción interdictal es la protección del hecho de la posesión sin perjuicio de los derechos de los interesados, los que pueden y deben ser dilucidados en una acción plenaria. Miranda Cruz v. SLG Ritch, *supra,* al mencionar a Janer v. Álvarez, 75 DPR 37 (1953); Rodríguez v. Suárez, 71 DPR 728 (1959) y otros. Cónsono con ello, nuestra Más Alta Curia ha expresado y reiterado que la sentencia que se dicte en casos de interdictos para recobrar la posesión de una propiedad no tiene autoridad de cosa juzgada sobre el derecho de las partes contendientes sobre la finca en cuestión. Pueblo v. Fajardo Sugar Growers Association, 45 DPR 380, 382 (1933) según citado por Miranda Cruz v. SLG Ritch, *supra*, a la pág. 968.

C.

La servidumbre es el derecho real limitado que recae sobre una finca, denominada finca sirviente, en beneficio de otra finca o de una o varias personas o comunidad individualizadas. La finca que recibe la utilidad de la servidumbre se conoce como finca dominante. Tal utilidad, puede consistir en el otorgamiento al titular de la finca dominante de un determinado uso de la finca sirviente o en una reducción de las facultades del titular de la finca sirviente. Véase, Art. 935 del Código Civil de Puerto Rico de 2020, 31 LPRA Sec. 8501.

Las servidumbres pueden ser continuas o discontinuas, aparentes o no aparentes y positivas o negativas. [11] A su vez, al clasificarse según su naturaleza o sus características, las servidumbres pueden ser forzosas- también conocidas como "legales" -o voluntarias. 31 LPRA sec. 8504. Otras

---

[11] Véase Artículo 937 del Código Civil, 31 LPRA Sec. 8503. Este, sobre las distintas clases de servidumbres explica que: las servidumbres continuas son aquellas cuyo uso es o puede ser incesante sin la intervención humana, mientras que las discontinuas son aquellas que se usan a intervalos más o menos largos y dependen de actos humanos. Por su parte, sobre las servidumbres aparentes dice que son aquellas que se anuncian y están continuamente a la vista por signos exteriores que tienen una relación objetiva con el uso y el aprovechamiento y que las no aparentes son las que no se manifiestan por signo alguno. Por último, y sobre las servidumbres positivas o negativas, informa que es positiva la servidumbre que impone al titular sirviente la obligación de soportar su ejercicio y las negativas son las que imponen una abstención determinada.

características de las servidumbres son que estas son inseparables de la finca a la que pertenecen e indivisibles.[12]

Las servidumbres continuas y aparentes se adquieren en virtud de título o por prescripción.[13] En cuanto a los modos de constitución, las servidumbres pueden constituirse: (a) por negocio jurídico celebrado voluntaria o forzosamente; (b) por sentencia, cuando se trata de una servidumbre forzosa en los casos y las condiciones previstas en la ley y el obligado a constituirla se niega a hacerlo voluntariamente; y por usucapión. 31 LPRA Sec. 8521.

Cabe señalar en cuanto a las servidumbres de paso como la envuelta en las controversias del presente caso que, por ser estas servidumbres discontinuas, pueden adquirirse únicamente mediante título, previo el pago de la indemnización correspondiente. 31 LPRA sec. 8523.[14] Igualmente, debemos destacar que el Artículo 953 del Código Civil vigente, que trata del menoscabo del uso de la servidumbre, establece que el titular sirviente no puede menoscabar el uso de la servidumbre constituida.

Sin embargo, conforme el mismo artículo establece, si el ejercicio de la servidumbre resulta excesivamente gravoso e incómodo, puede exigirse, a su costo, las modificaciones que crea convenientes en la forma y el lugar de la prestación, siempre que no disminuyan el valor y la utilidad de la servidumbre. Si la variación no puede obtenerse mediante acuerdo voluntario, podrá tenerse por autoridad judicial. 31 LPRA Sec. 8536.

-III-

Como arriba indicamos, el apelante señala la comisión de 8 errores. Por virtud de estos, cuestiona la apreciación efectuada por el foro primario

---

[12] Véase Artículos 939 y 940 del Código Civil de 2020, 31 LPRA Secs. 8505 y 8506.

[13] El término de prescripción establecido en el Artículo 945 del Código Civil actual, 31 LPRA Sec. 8522, es de quince (15) años.

[14] En lo referente a las servidumbres de paso, el Art. 955 del Código Civil, establece que: "[l]a persona titular del derecho de propiedad o de derechos reales posesorios de una finca sin salida o con salida insuficiente a una vía pública puede exigir a sus vecinos el acceso a ella, mediante el establecimiento de una servidumbre de paso de anchura y características suficientes para la utilización normal de la finca dominante." 31 LPRA sec. 8542.

de la totalidad de la evidencia desfilada, imputándole parcialidad y prejuicio, además de error manifiesto; ataca alguna de las determinaciones de hechos formuladas, así como ciertas expresiones emitidas por el TPI al resolver las controversias. Así, con el fin de impugnar la sentencia emitida en el caso, al discutir conjuntamente los errores que señaló, el apelante somete distintos planteamientos.

Primero, reclama que lo resuelto por el TPI constituyó una violación a su derecho constitucional al uso y disfrute de su propiedad al negarle que pueda tener invitados y/o terceros en su propiedad "toda vez que le impidió la entrada a su finca a través de la servidumbre de paso", único acceso de su finca. Según expone, tal prohibición le impide contratar personas para trabajar su finca de 12 cuerdas y/o realizar actividades familiares o tener visitas de amistades o familiares en su predio; puesto que "estos invitados estarían impedidos de utilizar la servidumbre.

Segundo, señala que la prueba testifical presentada durante el juicio demuestra que el apelado admitió que tiene otras vías de acceso a su predio y/o finca, por lo que la determinación del foro primario en cuanto a que el acceso a dicha finca es a través de la servidumbre de paso le parece irrisoria. Asimismo, argumenta que tal admisión, en conjunto con el hecho que el portón y candado que fue removido por orden del tribunal queda en la entrada de la servidumbre de paso, hace insostenible la determinación judicial que se le ha coartado al apelado el derecho al libre uso de su finca.

Tercero, el apelante clasifica de ridículo o cómico que el Tribunal le haya ordenado a instalar una verja hasta el borde de la servidumbre, cuando tal remedio no fue solicitado en la *Demanda.* En contrario, alega que el testimonio del señor Betancourt Kock probó que las agencias gubernamentales le requirieron a este instalar una verja en su propiedad para la siembra de cáñamo. Por esta razón, cataloga como nefasto, irracional e injusto el que se le ordene a asumir los costos de instalar una verja, cuando

la susodicha reja es un requisito que debe cumplir el apelado con relación a un proyecto de él.

Cuarto, el señor Ortiz plantea que la orden para que regrese el predio del demandante a su estado original "no tiene sentido en una mente racional". Ello, porque la orden carece de especificidad al no indicar a que área se refiere, obvia que "la naturaleza es sabia y [esta] siempre vuelve a su estado original.", y debido a que, aunque el apelado adujo que hubo un ensanchamiento de la servidumbre, la prueba demostró que sus medidas han permanecido intactas conforme a lo inscrito en el Registro de la Propiedad. En esta línea, añade que tampoco se alteró el largo del camino, pues las partes estipularon que el largo de la servidumbre es por toda la colindancia oeste de la finca. A su vez, expone que el TPI obvió que el perito del apelado hizo constar en la inspección ocular que "el espíritu contenid[o] en la escritura es que la servidumbre prosiguiera".

Quinto, el apelante considera irrisorio la determinación judicial que estableció que los movimientos de tierra causan escorrentías, ya que dicha palabra se define como "agua de lluvia que discurre por la superficie de un terreno" y no trata de movimiento de tierra. Sexto, el señor Ortiz le atribuye parcialidad al TPI por no darle ni un ápice de credibilidad a la prueba desfilada por él. En específico, manifiesta que hirió su sensibilidad el que el foro primario expresara que lo declarado por él en cuanto a que desconocía o no le había dado autorización a familiares para que intervinieran por él en el acuerdo alcanzado por dictarse la sentencia de injunction en el caso. Asimismo, sobre este asunto señala error manifiesto puesto que, "resulta imposible que personas que no han sido partes de la presente causa de acción hayan podido llegar a un acuerdo como adujo el TPI" y "las conclusiones están en conflicto con la evidencia recibida".

Séptimo, el apelante argumenta que la imposición de $5 mil dólares por concepto de honorarios de abogado (temeridad) es improcedente.

Señala, que la causa de acción instada en su contra, alegó desde un inicio que había ensanchado la servidumbre, tuvo que defenderse de tales alegaciones y al final, la prueba demostró que la servidumbre mide 11 metros, como siempre lo ha hecho.

En último y octavo lugar, el apelante alega que el TPI no enumeró y/o identificó la prueba documental admitida y/o estipulada y tampoco realizó un análisis de toda la prueba vertida ante su consideración. Aduce que, ello provocó que el foro primario declarara sin lugar la reconvención incoada, pese a que demostró que el apelado presentó documentos al Municipio de un caso del 2010, donde este ni el apelante fueron partes y allí fue mendaz al indicar que el asunto estaba ante el TPI cuando no se había instado una acción para detener su proyecto ecoturístico. Así pues, y por cada uno de los argumentos antes detallados, reclama evidenciado que el foro primario actuó con pasión, perjuicio y parcialidad.

En cambio, al comparecer a defender la sentencia apelada, el señor Betancourt arguye que la interpretación que el apelante le brinda a la sentencia es una equivocada, puesto que lo que en esta se estableció, es que debido a que no tiene permisos para utilizar su propiedad para negocios, la servidumbre en controversia no puede ser utilizada por **terceros ajenos.** Así, acusa al señor Ortiz de intentar inducirnos a error mediante la presentación de argumentos sobre una limitación de su derecho propietario inexistente. Similar intento le atribuye al apelante en cuanto a varios de los planteamientos levantados por el apelante. Específicamente, en cuanto a que de la prueba surge que él (apelado) tiene acceso a su casa por otro lugar y no la servidumbre, que el expediente judicial no sostiene el que se haya ordenado a su costo la construcción de la verja, y que fue por gestiones del señor Betancourt que se paralizó su proyecto ecoturístico. Además, niega que la sentencia no especifique las áreas que sufrieron cambios y deben revertirse a su estado original, que sea improcedente la imposición de

honorarios de abogado, que el foro primario no efectuó un análisis adecuado de toda la extensa prueba recibida y que procedía conceder la reconvención sometida por el apelante. Por último, el señor Betancourt argumenta que el hecho que el foro primario no le diera credibilidad al testimonio de la parte apelante no es indicativo que el juzgador haya actuado con pasión, perjuicio y parcialidad como este reclama.

Para atender los argumentos levantados en contra y a favor de la sentencia dictada en el caso, hemos evaluado los documentos sometidos por las partes. Particularmente, la *Sentencia* dictada y la Exposición Narrativa Estipulada presentada ante nos por las partes el 28 de octubre del año en curso.

Conforme el dictamen emitido, el TPI encontró probada la existencia de una servidumbre de paso en favor del predio perteneciente al señor Ortiz, así como que este no puede menoscabar el disfrute de esta, ni ejercer actos de dominio sobre ella tales como colocar un portón con candando en contra de la voluntad del dueño del predio sirviente.[15] Igualmente, consideró evidenciado: (1) que la servidumbre de paso no es de uso público; (2) que el apelante extendió el camino para hacer más cómodo el acceso de entrada a las facilidades construidas en su finca; (3) que se hicieron movimientos de terreno desde el talud de las facilidades hacia el camino nuevo; (4) que el movimiento de terreno creó una especie de "terreno invadido" de unos 504 metros cuadrados; (5) que tal movimiento se hizo sin los correspondientes permisos; y que el mismo ocasionó daños a la finca del apelado.[16]

Habiéndose encontrado probados estos hechos, el TPI le ordenó al señor Ortiz a cesar y desistir de los actos que atentaban contra la propiedad

---

[15] Determinación de hecho no controvertido número 1; página 7 del Apéndice de la *Apelación*.
[16] Determinaciones de Hechos Incontrovertidos Número 5, 10, 12, 13, 14 y 16. Véase también acápite V de la *Sentencia* sobre Conclusión.

del apelado, instalar una verja hasta el borde de la servidumbre; no impedir el uso de la servidumbre al señor Betancourt mediante candados en los portones que dan acceso a la propiedad de este. Por último, le advirtió que no podía utilizar la servidumbre de paso como camino de uso público.[17]

Según expresamos en el acápite que recoge el derecho aplicable de esta sentencia, los foros revisores no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad o la formulación de determinaciones de hechos que realicen los tribunales de primera instancia a menos que se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. Analizada la prueba sometida por las partes durante el juicio en su fondo, y confrontada la misma con los argumentos traídos por el apelante, no encontramos razones por las cuales debamos intervenir con la apreciación de la prueba efectuada por el foro primario. Tampoco encontramos que la *Sentencia* dictada en el caso padezca de las deficiencias o violaciones a derechos constitucionales imputadas, por lo que resolvemos que esta debe ser confirmada.

En primer lugar, los hechos que el foro primario encontró probados sí encuentran apoyo en la prueba documental y testifical sometida ante la consideración del TPI, así como en aquellas observaciones que pudo recoger durante la inspección ocular celebrada en el caso. Los breves argumentos levantados por el apelante en contrario, son insuficientes para derrotar la deferencia que merece la apreciación de la evidencia efectuada por el foro primario o el valor probatorio que le adjudicó a esta. Estos planteamientos, mayormente descansan en una interpretación errónea de lo que en efecto fue resuelto o en aseveraciones que consideran limitada y

---

[17] En cuanto a esto último, el foro primario enunció lo siguiente: "La servidumbre por su naturaleza es para uso exclusivo del dueño del predio dominante, pero no se ha constatado como un predio de Uso Público para que sea utilizado por terceros ajenos. Al no poseer permiso alguno para utilizar su predio o área como alejamiento, o como restaurante, entre otros, el demandado no podrá usar la servidumbre para dar acceso a su terreno a terceros. Se le instruye al demandado que no puede actuar de forma unilateral en las decisiones concernientes al espacio que constituye la servidumbre de paso y los predios aledaños pertenecientes al demandante." Véase página 16 del *Apéndice*.

acomodaticiamente los testimonios vertidos o la prueba documental sometida, sin considerarla en su totalidad.[18]

Es más, fuera de reclamar de forma general, que algunas de las determinaciones de hechos formuladas por el tribunal son contrarias a la prueba por lo que queda demostrada la parcialidad con la que el foro primario resolvió las controversias, el apelante no señala las porciones específicas en la prueba documental o testifical que evidencien su contención de parcialidad, prejuicio o error manifiesto. Nos parece que la somera discusión efectuada por el apelante no derrotó la deferencia que debemos observar hacia el avalúo de la prueba efectuado por el foro primario y en cuanto a qué hechos encontró probados conforme a la misma. Esta, descansa principalmente en su inconformidad con el resultado del caso. Por esta razón, no intervendremos con el avalúo efectuado por el TPI sobre la prueba.

Por otro lado, y contrario a lo argüido por el señor Ortiz, la *Sentencia* emitida por el foro primario no le prohibió recibir invitados y/o familiares. Por el contrario, las particulares expresiones efectuadas por el foro primario- transcritas en la nota al calce número 17 de esta *Sentencia*- permiten apreciar que el tribunal sólo advirtió al señor Ortiz que no puede utilizar el camino **como uno de uso público** que pueda ser utilizado por terceros ajenos, pues no cuenta con permiso alguno para utilizar su predio como alojamiento, restaurante u otros. Por consiguiente, no se violentó de

---

[18] Vemos por ejemplo que al cuestionar el que se le ordenara instalar una verja, este discute que del propio testimonio del señor Betancourt surge que dicha reja es un requisito que este debe cumplir para que se le otorguen ciertos permisos para un proyecto de cáñamo, por lo que, no siendo este uno de los remedios solicitados en la demanda, era injusto que se le ordenara hacer algo a su costo que le correspondía a hacer al apelado. Al así hacer, el apelante ignora que, durante su testimonio, el señor Betancourt declaró que existió una verja en la servidumbre que fue destruida por la maquinaria entrada bajo las órdenes del apelante. También, no toma en cuenta que, a preguntas del juez sentenciador, el perito Gallén contestó que existían trazos de la verja de alambre de púas en la servidumbre. Por tanto, a diferencia de lo aseverado por el señor Ortiz, la orden para instalar la verja fue en miras de restaurar la servidumbre a su estado original previó a la intervención del apelante y no a conceder un remedio adicional.

forma alguna su derecho al uso y el disfrute de su propiedad como reclama ante nos.

De igual forma, y en cuanto a la falta de especificidad que reclama en el dictamen apelado, nos resulta claro del lenguaje contenido en la *Sentencia* las áreas que deben revertirse a su estado original. Allí, no solamente se estableció cuál era la descripción de la servidumbre en su estado original, sino que se destacaron los cambios anotados por el perito en el correspondiente plano y las observaciones que hizo el propio tribunal durante la inspección ocular. Por último, sobre la imposición de honorarios de abogados, sabido es que en nuestro ordenamiento jurídico la imposición de honorarios por temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad. S.L.G. Flores– Jiménez v. Colberg, 173 DPR 843, 866 (2008). Evaluado los argumentos de las partes y examinado el expediente, no encontramos abuso de tal discreción por cual no intervendremos con ella.

En resumidas cuentas, luego de evaluar el legajo apelativo y los documentos en él contenidos y confrontar la *Sentencia* frente a los argumentos sometidos por el apelante, no encontramos razón por la cual debamos desviarnos de la apreciación de la prueba efectuada por el juzgador de hechos y así no lo haremos. Tampoco estimamos que los errores adicionales señalados hayan sido cometidos.

-IV-

Por los fundamentos antes expuestos, confirmamos la sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones